UNITED FUEL GAS COMPANY *v.* PUBLIC SERVICE COMMISSION OF WEST VIRGINIA ET AL.

No. 4. Argued November 23, 28, 1927. Reargued October 15, 16, 1928.—Decided January 2, 1929.

*Mr. John W. Davis,* with whom *Messrs. Harold A. Ritz, Douglas M. Moffat, Edward L. Patterson,* and *Chester J. Gerkin* were on the brief, for appellant.

*Messrs. F. M. Livezey* and *Robert S. Spilman,* with whom *Messrs. Arthur G. Stone, Paul W. Scott,* and *George S. Wallace* were on the briefs, for appellees.

MR. JUSTICE STONE delivered the opinion of the Court.

Appellant is a West Virginia corporation engaged in producing natural gas which it sells in West Virginia,

Pennsylvania, Ohio and Kentucky. A part of its business is the sale of gas at wholesale to distributors and is not regulated by any public body. Another part is the sale of gas direct to consumers in West Virginia cities and is subject to regulation by the appellee commission. In April, 1924, appellant filed with the commission a schedule increasing its rates in its " regulated " business in West Virginia. The commission, after an extensive hearing, denied this application for an increase, holding that the existing schedule yielded a fair return on appellant's property. P. S. C. W. Va. Bulletin 91. Appellant then sought, by the present suit in the District Court for the Southern District of West Virginia, an injunction restraining the commission from interfering with appellant in putting into effect its new and higher rate schedule. Application for a preliminary injunction was heard by a court of three judges upon the record before the commission and some additional testimony, and was denied. 14 F. (2d) 209. The case is here by direct appeal from the order of the district court, under § 266 of the Judicial Code.

An earlier proceeding before the commission in 1917 had resulted in its order for an increase in the rate of 5 cents per 1,000 cubic feet which, in 1923, was set aside by the Supreme Court of West Virginia. 95 W. Va. 91. A similar case, *United Fuel Gas Co.* v. *Railroad Comm'n of Kentucky*, 13 F. (2d) 510, coming here by appeal from a final decree of the District Court for eastern Kentucky, involving similar and some additional questions and denying the relief asked, was heard with this and is discussed in a separate opinion, *ante*, p. 300. The two cases involve substantially the same property and business. The issues as to valuation are identical and so far as material here the records as to them are practically the same.

Appellant, through ownership in fee and leases or contracts on a rental or royalty basis, controls the production

of natural gas from 814,910 acres of land. A part of this area, the so-termed "proven" territory, is at present being used in production, the remainder being held in reserve as either "probable" or "unfavorable" sources of future production. Its principal items of property consist of its interest in this acreage, working capital, buildings, machinery, mains, pipes, compressors and other equipment used in the production and distribution of gas.

The value as claimed by appellant and as found by the commission and the court of the total property of appellant used in both its "regulated" and "unregulated" business, follows:

Value claimed by appellant:

|  | As of Dec. 31, 1924 |
|---|---|
| Physical property (production, transmission and distribution systems, etc.) | $22,274,274.00 |
| Gas lands, leaseholds, and rights | 36,449,176.00 |
| General overhead charges | 6,357,046.00 |
| New property added during 1924 | 2,044,778.00 |
| Working capital | 990,000.00 |
| Going concern value (difference between reproduction cost new and same less deterioration) | 8,423,105.00 |
|  | $76,538,379.00 |

Value as found by the commission:

|  | As of Dec. 31, 1923 | As of Dec. 31, 1924 |
|---|---|---|
| Physical property | $25,000,000.00 | $25,648,457.72 |
| Working capital | 990,000.00 | 990,000.00 |
| Going concern value | 3,000,000.00 | 3,000,000.00 |
| Gas rights and leaseholds (book value) | 6,343,329.67 | 6,361,511.42 |
|  | $35,333,329.67 | $35,999,969.14 |

Value as found or assumed by the court below:

|  | As of Dec. 31, 1923 |
|---|---|
| Physical property (production, transmission and distribution systems, overhead, etc., less depreciation) | $26,000,000.00 |
| Going concern value | 3,000,000.00 |

|  | As of Dec. 31, 1923 |
|---|---|
| Working capital | $990,000.00 |
| Assumed value of gas reserve presently used and useful in the public service ("proven" territory) | 10,317,311.39 |
|  | $40,307,311.39 |

The court below made no finding as to the value of appellant's gas rights. It included in the rate base the 136,384 acres of land described by appellant's witnesses as proven territory, that is, areas which had been thoroughly tested and are now producing gas, and excluded 126,208 acres of land described as probable territory, that is, territory which had been partially tested or which appeared on the basis of geological evidence and its geographical relation to productive areas to be a probable source of natural gas. It was by this division of appellant's gas field and the inclusion of but a part in the rate base, at the full value claimed by appellant, that the court below reached its assumed valuation of the gas field of $10,317,311. The rest of the territory, consisting of 552,319 acres classified as improbable or unfavorable territory, was disregarded by the court below and appellant's own expert in estimating available gas supply.

By allocating the various items of appellant's property to the regulated business, on the basis of percentages agreed upon by the parties, the court reached the conclusion that the following was the value of the property used and useful in the regulated business:

|  | As of Dec. 31, 1923 |
|---|---|
| Tangible property | $7,530,826.00 |
| Going concern value | 847,350.00 |
| Working capital | 282,546.00 |
| Gas Reserve (proven territory only) | 2,590,677.00 |
|  | $11,251,399.00 |

The court further found that a reasonable rate of return on the property in the rate base was 12.77% (8% plus

1.12% depreciation,[1] plus 3.65% amortization). It found that the net earnings from the regulated business were $1,555,593 (before deduction for depreciation and amortization) and were sufficient to pay a return of 12.77% on more than the value as found, namely on $12,377,124.

An order of a court of three judges denying an interlocutory injunction will not be disturbed on appeal unless plainly the result of an improvident exercise of judicial discretion. *Chicago Great Western Ry.* v. *Kendall,* 266 U. S. 94, 100; and see *Meccano, Ltd.* v. *Wanamaker,* 253 U. S. 136, 141. To support the burden resting upon it, appellant, while challenging generally the correctness of the court's valuation, places its chief reliance on the alleged erroneous valuation of its gas field. To support the claim to a much higher valuation, it relies upon the same theories and the same method of ascertaining the value of the gas field as were pressed upon us in No. 1 [*ante,* p. 300.] With respect to this item, after making the same assumptions as in that case, we reach the same conclusion, for reasons there stated at length, that there is no dependable evidence of value of appellant's gas field in excess of the value assumed on its books; that no ground is presented for assigning to it a value beyond the $6,343,329 so assumed on appellant's books, a smaller value than that used by the court in its calculations.

With respect to other conclusions of the court below, there is no serious suggestion that the court abused its discretion. In 1923 the case was before the highest court of the state. The estimates now presented to this Court

---

[1] The commission had allowed this percentage amounting to $404,333 as covering depreciation of plant. The court merely allowed the total amount so found as plant depreciation and did not estimate depreciation at a percentage of its own rate base, which was higher than that of the commission, the principal item of its valuation differing from that of the commission, being its assumed value of appellant's gas rights.

are based on the business of that year, and we are without information as to appellant's business and return upon it in the intervening years. We think it clear that no case is presented which would warrant interference by this Court with the order below denying interlocutory relief.

*Affirmed.*