## HANNAN et al. v. CITY OF HAVERHILL et al.

### No. 3669.

Circuit Court of Appeals, First Circuit.

May 29, 1941.

**88**

W. Stanley Soroka, of Haverhill, Mass. (W. Clifford McDonald, of Haverhill, Mass., on the brief), for appellees.

Hayden C. Covington, of Brooklyn, N. Y., for appellants.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This case is here on appeal from an order of the District Court denying an application for an interlocutory or preliminary injunction. 28 U.S.C.A. § 227.

Plaintiffs, all citizens of Massachusetts, describe themselves as "Jehovah's witnesses". In propagation of their faith they have been engaged in offering for sale on the streets of Haverhill, Massachusetts, at five cents a copy, a magazine called "The Watchtower" and a journal called "Consolation", both of which are published by the Watchtower Bible & Tract Society, Inc. The complaint sets forth that the plaintiffs and others of their company, while so engaged, have repeatedly been arrested, prosecuted and fined for violations of a certain ordinance of the city of Haverhill reading in part as follows:

"No persons except newsboys selling newspapers shall stand in any street or way for the purpose of selling any article, or for the exercise of any business or calling unless otherwise provided by law, ordinance or special permit."

The plaintiffs have steadfastly refused to apply for a special permit, and none has been issued by the city officials. In their answers severally filed, the defendants admit the arrests and prosecutions for violation of the ordinance, and admit that enforcement of the ordinance will continue, but deny various other allegations of discriminatory and oppressive treatment which, if true, might have a bearing on the appropriateness of injunctive relief. Similar issues of fact were raised by the affidavits and counter-affidavits upon which the application for an interlocutory injunction was heard. The complaint prays for temporary and permanent injunctions restraining the city and its various officials from enforcing the said ordinance "as to plaintiffs and others of Jehovah's witnesses and from arresting and prosecuting plaintiffs and others of Jehovah's witnesses on account of their activity in distributing said books, booklets and magazines."

Jurisdiction in the federal district court is rested upon § 24(14) of the Judicial Code, 28 U.S.C.A. § 41(14), and upon 8 U.S.C.A. § 43, derived from the Civil Rights Act of April 20, 1871, 17 Stat. 13, as reenacted with modifications in R.S. § 1979. City of Manchester v. Leiby, 1 Cir., 117 F.2d 661, 664.

In a memorandum of decision accompanying its order denying the plaintiffs' application for a temporary injunction, the District Court, 38 F.Supp. 234, 236, said: "In view of such presumption as exists in favor of the constitutionality of legislation by a state or one of its arms, a court of first instance should not, by granting the temporary injunction here sought, strike down this ordinance."

The streets are natural and proper places for purposes of assembly, of interchange of thought and opinion on religious, political and other matters, either by word of mouth or by the distribution of literature. Such use of the streets and public places, sanctioned by ancient usage, has become part of the liberties of the people protected by the Fourteenth Amendment from state encroachment. Hague v. C. I. O., 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423; Schneider v. State, 308 U.S. 147, 163, 60 S.Ct. 146, 84 L.Ed. 155; Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A. L.R. 1352. We take it also that this con-

stitutional right to make reasonable use of the streets for the purpose of distributing literature is not limited to handing it out free of charge, but includes also the right to offer the literature for sale so as to defray the cost of publication—otherwise, the circulation of one's opinions or the propagation of one's faith on an extensive scale would tend to become a prerogative of the well-to-do. Cf. Lovell v. Griffin, 303 U.S. 444, 452, 58 S.Ct. 666, 82 L.Ed. 949. In Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352, a state statute was invalidated as an unconstitutional restriction on the right to solicit funds for religious objects.

But these constitutional liberties are relative, not absolute, "and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order." Hague v. C. I. O., 307 U.S. 496, 516, 59 S.Ct. 954, 964, 83 L.Ed. 1423. A state or municipality "may by general and non-discriminatory legislation regulate the times, the places, and the manner of soliciting upon its streets, and of holding meetings thereon, and may in other respects safeguard the peace, good order and comfort of the community, without unconstitutionally invading the liberties protected by the Fourteenth Amendment." Cantwell v. Connecticut, 310 U.S. 296, 304, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 128 A.L.R. 1352. The regulations, however, must be appropriate to the subject matter regulated. Restrictions properly applicable to hawkers and peddlers selling ordinary articles of merchandise on the streets might not be appropriate to regulate the sale and distribution of literature of the sort offered for sale by the plaintiffs. As the court said in Schneider v. State, 308 U.S. 147, 161, 60 S.Ct. 146, 151, 84 L.Ed. 155:

"In every case, therefore, where legislative abridgment of the rights is asserted, the courts should be astute to examine the effect of the challenged legislation. Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions. And so, as cases arise, the delicate and difficult task falls upon the courts to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of the rights."

The ordinance in the case at bar is not, on its face, directed at freedom of speech or the free exercise of religion. While it may in its general provisions cover the sale of religious tracts on the streets, it does not, on its face, set up the chief of police[1] as a censor to pass on the merits of the literature to be offered for sale, with authority to withhold a permit if he should deem the literature improper for public dissemination. The record does not disclose how that official has construed his authority under the ordinance, nor by what standards or criteria he is guided in passing upon applications for special permits. So far as appears from that portion of the ordinance set forth in the record, no standard is there laid down for his guidance.

Possibly, the Supreme Judicial Court of Massachusetts, if it were called upon to interpret and apply the ordinance, might be able to supply, for the guidance of the chief of police, such standards of administrative action as would confine his authority within constitutional limits, as was done by the Supreme Court of New Hampshire in State v. Cox, 90 N.H. —, 16 A.2d 508, affirmed by the Supreme Court of the United States sub nom. Cox v. State of New Hampshire, March 31, 1941, 61 S.Ct. 762, 85 L.Ed. —. But in the Cox case, it may be observed, the requirement of a special permit had to do with using the streets for parades and processions, as to which a regulation of this sort is more obviously needed in the interest of public order and convenience.

However that may be, we do not have to decide what seems to us a doubtful question on the authorities, that is, whether the present plaintiffs could successfully invoke the Fourteenth Amendment upon appeal from conviction in the state courts for selling the magazines on the streets without

[1] The part of the ordinance appearing in the record, and quoted above in this opinion, contains no indication as to which official of the city is to issue the special permit. At the oral argument we were informed by counsel for the city that in another section of the ordinance, not appearing in the present record, authority to issue the permits is vested in the chief of police. The full text of the ordinance is thus not before us; according to the complaint the quoted portion is Section 8 of the ordinance.

having applied for the special permit required by the ordinance. Cf. City of Manchester v. Leiby, 1 Cir., 117 F.2d 661, where the ordinance itself made it the mandatory duty of the official to issue the badge or permit upon receipt of an application properly executed. What we have before us is merely an appeal from an order denying a temporary injunction.[2]

 "It is well established doctrine that an application for an interlocutory injunction is addressed to the sound discretion of the trial court; and that an order either granting or denying such an injunction will not be disturbed by an appellate court unless the discretion was improvidently exercised." Alabama v. United States, 279 U.S. 229, 231, 49 S.Ct. 266, 73 L.Ed. 675; United Fuel Gas Co. v. Public Service Commission, 278 U.S. 322, 326, 49 S.Ct. 157, 73 L.Ed. 402. In New York Asbestos Mfg. Co. v. Ambler Asbestos Air-Cell Covering Co., 3 Cir., 102 F. 890, 891, the court said: "The granting of a preliminary injunction is an exercise of a very far reaching power, never to be indulged in except in a case clearly demanding it; and the decision of a court of first instance, refusing such an injunction, will not, except for very strong reasons, be reversed by this court." See also Special School District v. Speer, 9 Cir., 75 F.2d 420; Decorative Stone Co. v. Building Trades Council, 2 Cir., 13 F.2d 123. In rare cases, an appellate court will reverse the trial court for refusal to issue an interlocutory injunction, as in Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972. In that case, if the collection of a tax of doubtful constitutionality were not restrained pendente lite, the injury to the moving party would be certain and irreparable though final decree should go in his favor, because the laws of the state afforded no remedy for restitution of tax moneys illegally collected. No such extreme case is presented here. On the record before us we cannot say that the district judge abused his discretion in denying an interlocutory injunction. The plaintiffs have never applied for a special permit and been refused;

nor have they shown that such an application would be a futile gesture. Therefore it cannot be said that denial of an interlocutory injunction will work irreparable injury to the plaintiffs by making it impossible for them to distribute their literature on the streets without further harassing prosecutions. Of course, appeal from the convictions already had in the state courts will raise the question of the constitutional right of the plaintiffs to disregard the ordinance altogether and sell their tracts without applying for a special permit.

All we have to decide on this appeal, and all we do decide, is, that denial of an interlocutory injunction in the circumstances disclosed was not an improvident exercise of the discretion confided to the trial court.

The order of the District Court is affirmed, with costs to the appellees.

[2] In Lovell v. Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 147; Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352, and Cox v. State of New Hampshire, March 31, 1941, 61 S.Ct. 762, 85 L.Ed. ——, the question was directly involved as to the validity of convictions in the state courts for violation of the ordinances. In Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, the court had under review a permanent injunction granted by a federal district court restraining enforcement of an ordinance, but here the plaintiffs had repeatedly applied for permits without success.