# WHALEN, COMMISSIONER OF HEALTH OF NEW YORK *v.* ROE ET AL.

No. A–368.   Decided October 28, 1975

See: 403 F. Supp. 931.

MR. JUSTICE MARSHALL, Circuit Justice.

This is an application for a stay of the judgment of a three-judge court sitting in the Southern District of New York. The applicant, the Commissioner of Health of the State of New York, has been enjoined by the three-judge court from enforcing certain provisions of New York's Public Health Law (Law). Respondents are various physicians, organizations of physicians, and patients in the State of New York who successfully brought suit to have those provisions declared unconstitutional.

The provisions at stake are those parts of §§ 3331 (6), 3332 (2)(a), and 3334 (4) of the Law (Supp. 1974) that require the name and address of each patient receiving a Schedule II controlled substance to be reported to the applicant. Schedule II drugs are those that have a high potential for abuse, but also have an accepted medical use. They include opiates and amphetamines. Under the Law, a doctor prescribing a Schedule II drug does so on a special serially numbered triplicate prescription

1314

form.  One copy is retained by the doctor, a second goes to the pharmacist (if applicable), and the last copy goes to the applicant, who transfers the data, including the name and address of the patient, from the prescription to a centralized computer file.

Respondents brought this action shortly after the effective date of the computerization program, alleging violations of their constitutional rights under 42 U. S. C. § 1983 and grounding jurisdiction on 28 U. S. C. § 1343 (3).  Specifically, respondents claimed that mandatory disclosure of the name of a patient receiving Schedule II drugs violated the patient's right of privacy and interfered with the doctor's right to prescribe treatment for his patient solely on the basis of medical considerations. A three-judge court was convened.  *Roe* v. *Ingraham*, 480 F. 2d 102 (CA2 1973).

At trial, various respondents testified that they were inhibited from using or prescribing Schedule II drugs they otherwise found beneficial because of a reluctance to disclose their or their patients' identities to the State. While questioning respondents' standing to sue, the applicant asserted that knowledge of patients' names was necessary to enable the computer system to detect drug abuse.  When put to its proof by respondents, however, the applicant eventually conceded that the names and addresses of patients were useful in detecting only one abuse: patients who go from doctor to doctor (using the same name on each visit) in order to obtain an excessive supply of drugs.  Thereupon respondents showed that in 15 months of operation the computer system had located only one suspected "doctor-shopper" while processing over 125,000 prescriptions per month.  Thus respondents contended that the centralization of patients' names and addresses served no compelling state interest sufficient to offset the asserted invasion of privacy.

The three-judge court accepted respondents' arguments. The court read our decisions in *Roe* v. *Wade,* 410 U. S. 113 (1973), and *Doe* v. *Bolton,* 410 U. S. 179 (1973), as placing the doctor-patient relationship among those zones of privacy accorded constitutional protection. While noting that *Roe* and *Doe* concerned the most intimate of personal relations, sexual intimacy and the decision to bear a child, the court refused to hold the doctor-patient relationship constitutionally protected only when matters of childbearing were at stake. Rather, it noted the intimate nature of a patient's concern about his bodily ills and the medication he takes, and held that these matters, too, are protected by the constitutional right to privacy. While reaching this conclusion primarily on the basis of *Roe* and *Doe,* the court drew some support from the concurring and dissenting opinions in *California Bankers Assn.* v. *Shultz,* 416 U. S. 21, 78 (1974) (POWELL, J., concurring); *id.,* at 79 (DOUGLAS, J., dissenting); *id.,* at 91 (BRENNAN, J., dissenting); *id.,* at 93 (MARSHALL, J., dissenting); which it read as indicating that a majority of this Court would accord constitutional protection, at least against a wholesale reporting requirement, to all "intimate areas of an individual's personal affairs." *Id.,* at 78 (POWELL, J., concurring). Upon finding that respondents had a protected privacy interest in the medication they received, the court balanced that interest against the State's need for patients' names, and concluded that, with one suspect uncovered over 15 months, the need shown was ephemeral. "The diminution of a constitutionally guaranteed freedom is too great a price to pay for such a small governmental yield." *Roe* v. *Ingraham,* 403 F. Supp. 931, 937 (SDNY 1975) (footnote omitted).

Finding those portions of the Law that demanded disclosure of patients' names and addresses to the State to

be unconstitutional on the facts, the court enjoined the State from enforcing those provisions and from accepting for filing prescriptions or other documents disclosing the identities of patients receiving Schedule II drugs. The court also ordered the destruction of any name-bearing prescription forms in the State's possession and the expungement of names from all computer records. The court stayed the destruction and expungement order pending disposition of the case by this Court; it refused, however, to stay its declaration of unconstitutionality and its injunction against enforcement of the provisions and acceptance of incoming prescriptions.

Thus the application for stay now before me concerns only those matters the District Court refused to stay. The principles that govern a Circuit Justice's in-chambers review of stay applications are well known. A single Justice will grant a stay only in extraordinary circumstances. Certainly the judgment of the lower court, which has considered the matter at length and close at hand, and has found against the applicant both on the merits and on the need for a stay, is presumptively correct. To prevail here the applicant must meet a heavy burden of showing not only that the judgment of the lower court was erroneous on the merits, but also that the applicant will suffer irreparable injury if the judgment is not stayed pending his appeal.

MR. JUSTICE POWELL has succinctly stated the considerations pertinent to evaluating these two factors:

"As a threshold consideration, Justices of this Court have consistently required that there be a reasonable probability that four members of the Court will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction. See *Mahan* v. *Howell,* 404 U. S. 1201, 1202; *Organized Village of Kake* v. *Egan,* 80 S. Ct. 33, 4 L. Ed.

2d 34 (1959). Of equal importance in cases presented on direct appeal—where we lack the discretionary power to refuse to decide the merits—is the related question whether five Justices are likely to conclude that the case was erroneously decided below. Justices have also weighed heavily the fact that the lower court refused to stay its order pending appeal, indicating that it was not sufficiently persuaded of the existence of potentially irreparable harm as a result of enforcement of its judgment in the interim." *Graves* v. *Barnes,* 405 U. S. 1201, 1203–1204 (1972) (POWELL, J., in chambers).

See also *Aberdeen & Rockfish R. Co.* v. *SCRAP,* 409 U. S. 1207, 1218 (1972) (BURGER, C. J., in chambers); *Railway Express Agency* v. *United States,* 82 S. Ct. 466, 468, 7 L. Ed. 2d 432, 434 (1962) (Harlan, J., in chambers); *United Fuel Gas Co.* v. *Public Service Comm'n,* 278 U. S. 322, 326 (1929).

Applying these standards to the application before me, I conclude a stay should not be granted. The three-judge court gave careful consideration to applicant's motion for a stay and, indeed, granted one insofar as it deemed necessary to prevent irreparable harm to applicant's interests. Applicant has shown nothing to persuade me the lower court erred. If applicant's position is sustained on appeal, all the data it is precluded from processing by the District Court's order will be readily available from the State's doctors and pharmacists, who are required by law to retain the complete prescription form for five years. The information now denied the State's computers can thus be located and tabulated at a later date. While the State may suffer delay in the complete implementation of its computerization program, delay alone is not, on these facts, irreparable injury.

I conclude that applicant would suffer no irreparable

injury if a stay is denied. This conclusion necessarily decides the application and renders unnecessary consideration of the possibility, since this case involves an appeal as of right, that applicant will be able to convince five Justices to reverse the three-judge court. I do note, however, that the right to privacy is a sensitive and developing area of the law and that the three-judge court did not apply it in a manner plainly inconsistent with our decisions. Likewise, the court's conclusion that respondents had standing seems in accord with the liberal standing decisions of this Court. Of course, this conclusion and my denial of a stay on the papers now before me are not to be taken as a reflection of my views on the merits of this case, or as an indication of the ultimate disposition of the case in this Court.

*The application is denied.*