EDWARD JAFFARIAN & another *vs.* BUILDING COMMISSIONER OF SOMERVILLE.

Middlesex.   March 6, 1931. — April 2, 1931.

Present: RUGG, C.J., PIERCE, WAIT, & SANDERSON, JJ.

*Miniature Golf. License. Mandamus. Constitutional Law,* Police power. *Municipal Corporations,* Officers and agents. *Practice, Civil,* Exceptions.

Upon all the findings with respect to a miniature golf course open to the public, including findings that the game was a wholesome and healthful pastime; that admission to the course was free, and a green fee, paid after admission, was charged to those wishing to practice or receive instruction in certain golf strokes; that it was not obligatory on those admitted to the course to use it and pay the green fee; that instruction in golf was included in the green fee; and that the course was conducted for the purpose of permitting those using it to receive exercise and entertainment therefrom, it was *held*, that the course was a public amusement within the meaning of G. L. c. 140, § 181, and subject to regulation under the police power.

At the hearing of a petition for a writ of mandamus to compel the building commissioner of a city to issue a permit for the erection of a building on the petitioner's land for the purpose of carrying on a public amusement subject to G. L. c. 140, § 181, it appeared that it was the general practice of the respondent to require that a license or permit for the operation of the amusement be first obtained from the mayor before he would grant a building permit. No description of the size, material or construction of the proposed building appeared. The petition was dismissed. *Held*, that, although the general practice of the respondent could not be sustained, the record was insufficient to enable this court to decide the question whether the refusal by the respondent to grant a building permit because no license had been obtained to operate the amusement was unreasonable or illegal; and that there was no error in the dismissal of the petition.

Strictly construed, a bill of exceptions showing an exception merely to an order dismissing a petition for a writ of mandamus does not raise questions of law resulting from the refusal of requests for rulings printed therein.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Middlesex on August 19, 1930, and afterwards amended.

The case was referred to an auditor and afterwards was heard by *Crosby*, J. Material facts are stated in the opinion. The single justice refused the following requests for rulings by the petitioners:

"1. The plaintiffs are entitled as matter of law to the remedy sought.

"2. The golf course to have been built by the plaintiffs is not such an amusement under G. L. c. 140, § 181, as requires a license.

"3. The plaintiffs ask the court to rule that under the Fourteenth Amendment to the Constitution of the United States, whose protection they hereby invoke, the refusal of the defendant to grant them the building permit was a violation of their lawful rights."

The petition was ordered dismissed. The petitioners alleged exceptions to the order dismissing the petition.

*J. E. Hannigan & F. R. Mullin*, for the petitioners.

*D. J. Kelley*, City Solicitor, for the respondent.

RUGG, C.J. The petitioners seek by this proceeding to compel the respondent, the building commissioner of the city of Somerville, to issue a permit for the erection of a building

upon their land. An auditor was appointed whose findings were adopted by the single justice. These findings, so far as here material, were: "I find, upon common knowledge, that miniature golf courses have become popular all over the country; that the game calls for quiet, order and decorum, and that these are generally, voluntarily maintained; that many of said courses are established in residential and industrial districts, and patrons using said courses frequently come on foot from the immediate neighborhood; that the playing of the game is as free from evil tendencies as is the standard game of golf; that it is enjoyed by persons of all ages and classes; that so far as it is a public diversion or amusement, it is a wholesome and healthful pastime and no substantial cause for complaint in respect of public morals or welfare or safety has arisen from the use of the many courses established . . . . Admission to the course is to be free. A so called green fee is to be charged, similar to the green fee charged on regular size golf courses to those wishing to practice or receive instruction in certain golf strokes, but it is not obligatory on those admitted to the premises to use the golf course and pay a green fee or any other charge. Instruction in golf is to be included in the charge or green fee, which is paid after admission; . . . the course is to be conducted and operated for the purpose of permitting those using it to learn some of the golf strokes, and to practice or perfect their skill in putting or other golf strokes and to receive exercise and entertainment therefrom . . . . I further find that it has been the practice in the office of the building commissioner for the city of Somerville, not to grant building permits for the construction of a building when the carrying on of the business in said building is dependent upon a license or permit to be obtained from another department; that in that event, the building commissioner requires that the license or permit for the operation of said business be first obtained before he will grant a building permit; that the petitioners applied for a license to conduct a miniature golf course and that said application was rejected by the mayor . . . that it was the intention of the petitioners to provide instruction to those persons who would request it; that said

instruction would only be given to those persons who would pay a green fee for the use of the course; that admission to the course was to be free and that the general public was to be invited to play on the course."

It is provided by G. L. c. 140, § 181, that "The mayor or selectmen may . . . grant, upon such terms and conditions as they deem reasonable, a license for theatrical exhibitions, public shows, public amusements and exhibitions of every description . . . to which admission is obtained upon payment of money or upon the delivery of any valuable thing; or by a ticket or voucher obtained for money or any valuable thing, or in which, after free admission, amusement is furnished upon a deposit of money in a coin controlled apparatus . . . ."

We are of opinion that the miniature golf course proposed to be constructed and used as indicated in the auditor's report constitutes a public amusement within the meaning of this section. While it has aspects of athletic interest, it has the attributes of a public amusement. Its construction and arrangement appear to be designed to attract the attention of travellers as well as of others. The conduct of the game is public. The action of the players is open to general observation. The plan of the petitioners is a manifest effort to attract people to the game in order to make financial profit to themselves. For participation in the game payment of money is required. It is as much within the purview of the statute as if an admission fee were charged for the observers as well as for the players. It is a plain attempt to make money out of the amusement. Supervision by public officials of the numbers of people likely to gather is or may be as necessary as it is in the conventional and long established kinds of amusement. Although there is present the possible element of instruction to those who desire it, that does not differentiate the proposed establishment from classification as a public amusement. The case comes on this point within the authority of *Commonwealth* v. *Quinn*, 164 Mass. 11, and *Commonwealth* v. *Bow*, 177 Mass. 347. Although the miniature golf course is a comparatively new institution, it nevertheless has characteristics of somewhat common knowledge.

The patrons to a considerable extent come by automobile and may readily create congestion or obstruction to travel in the public ways in the immediate neighborhood. Police regulation under these circumstances may be essential to the public order.

The characteristics of miniature golf courses are of such a nature as to render proper their regulation under the police power. Cases like *Wyeth* v. *Cambridge Board of Health,* 200 Mass. 474, *Kilgour* v. *Gratto,* 224 Mass. 78, and cases there cited, and *Cawley* v. *Northern Waste Co.* 239 Mass. 540, are entirely distinguishable. It is enough to say that *Condon* v. *Forest Park,* 278 Ill. 218, is distinguishable in its facts from the case at bar. The circumstance that the miniature golf course is a wholesome and healthful pastime and a proper public diversion and amusement is of slight consequence in this connection. It cannot be presumed that said § 181 was designed to license any other kind of public amusements. It is not to be thought that the Legislature intended thereby to authorize public amusements contrary to public morals or having tendencies toward the impairment of public order. The right to require licenses is based on the conception that places of public amusement may require supervision by public authorities to the end that they may not degenerate and become obnoxious to the public welfare. Miniature golf courses fall under this general principle. *Commonwealth* v. *McGann,* 213 Mass. 213. *Opinion of the Justices,* 247 Mass. 589.

The facts set out in the auditor's report respecting the proposed building are not sufficient to enable us to decide the question whether the refusal of the respondent to grant a building permit because no license had been obtained to operate the golf course was unreasonable or illegal. No description of the size, material or construction of the proposed building is set out in the record. Manifestly a general practice to refuse to grant permits for the construction of buildings in which to maintain public amusements until a license was granted for such public amusement could hardly be sustained. The granting of the license to conduct the public amusement well might depend upon the nature of

construction, the equipment and the safeguards of the building in which it is proposed to conduct the amusement. For example, a license for a theatre could not intelligently be granted respecting a vacant lot. The licensing board rightly could demand observation and examination in considerable detail of the building itself as a condition precedent to granting the license. See in this connection *Cheney* v. *Coughlin*, 201 Mass. 204, 209, 210.

The case has been considered as it has been argued by the petitioners on the theory that exceptions were saved to the refusal to grant requests for rulings numbered 2 and 3. Strictly construed the bill of exceptions does not raise questions of law arising upon the denial of those requests. The only statement of exceptions is to the order dismissing the bill. It is enough to say that a simple exception to the refusal to grant a petition for a writ of mandamus presents no ground for reversing the action of the single justice. The case is decided also on that footing. *Blackwell* v. *Mayor of Boston*, 261 Mass. 58, 60, and cases cited.

*Exceptions overruled.*