Mosey Cafe, Inc. *vs.* Licensing Board for the City of Boston & another.

Suffolk.   October 7, 1958. — December 5, 1958.

Present: Wilkins, C.J., Ronan, Spalding, Counihan, & Cutter, JJ.

*License. Restaurant. Public Entertainment. Boston. Constitutional Law,*
   Freedom of speech, Freedom of the press, Public entertainment,
   Police power. *Jurisdiction,* Federal field. *Words,* "Public show."

In a restaurant selling food and drink to the public, regularly broad-
   casted programs available to customers on television or radio sets
   maintained there and recorded music heard there by means of a coin-
   operated "juke box" constituted a "public show" the furnishing of
   which on weekdays was subject to the licensing requirements of G. L.
   c. 140, § 183A, as amended by St. 1936, c. 71, § 1, even though such
   modes of entertainment might have been unknown when the statute
   was drafted. [202–203]

St. 1949, c. 222, empowering Boston to fix by ordinance from time to time
   fees for certain licenses granted under the authority of statutes "not-
   withstanding any general or special law heretofore passed fixing a
   different fee or charge or imposing any limitation on the amount
   thereof," authorized the imposition by c. 40A, § 1, cl. 92, inserted in
   1956 in the Revised Ordinances of Boston (1947), on one licensed as
   a common victualler under G. L. c. 140, § 2, of a fee for a license to fur-
   nish entertainment granted under c. 140, § 183A, as amended by
   St. 1936, c. 71, § 1, notwithstanding the express provision of § 183A
   that "no fee shall be chargeable" for such entertainment license to one
   licensed under c. 140, § 2. [203–204]

G. L. c. 140, § 183A, as amended by St. 1936, c. 71, § 1, is intended to pre-
   serve public order at public entertainments in eating or drinking es-
   tablishments through annual licensing of the entertainment furnished
   and does not impose any prior restraint on the content of the enter-
   tainment nor violate the constitutional guaranties of freedom of
   speech and freedom of the press. [204–205]

G. L. c. 140, § 183A, as amended by St. 1936, c. 71, § 1, is not void under
   the Fourteenth Amendment to the Constitution of the United States
   by reason of failure to establish adequate standards for the guidance
   of licensing authorities in granting or denying annual licenses to eating
   or drinking establishments for the furnishing of entertainment to
   customers. [205]

No Federal legislation effective in 1958 with respect to programs broad-
   casted on television or radio precluded a State requirement, as a
   matter of local public order, of an annual license for the furnishing of
   entertainment by eating or drinking establishments to customers
   through maintenance of television or radio sets. [205–206]

BILL IN EQUITY, filed in the Superior Court on September 20, 1957.

The suit was reported by *Morton*, J.

*Hirsh Freed*, (*Arthur Sherman* & *Herbert Baer* with him,) for the plaintiff.

*William H. Kerr*, for the defendants Licensing Board for the City of Boston and another.

WILKINS, C.J. This bill in equity for a declaratory decree under G. L. c. 231A is reserved and reported without decision upon the pleadings and an agreement as to all the material facts. G. L. c. 214, § 31. The broad questions to be determined are whether G. L. c. 140, § 183A, and Revised Ordinances of Boston (1947) c. 40A, § 1, cl. 92, are inapplicable or void as to the plaintiff in so far as they purport to impose licensing requirements and the payment of license fees for furnishing public entertainment on weekdays solely through "music provided by mechanical or electrical means" by the use of " juke boxes," television, or radio. The defendants are the city and the licensing board.

The plaintiff, a Massachusetts corporation, has a place of business known as "Ball and Bat Cafe" at 565 Tremont Street, Boston. It has been licensed by the board as a common victualler under G. L. c. 140, § 2, and as a common victualler it has been further licensed by the board under G. L. c. 138, § 12, as amended, to sell, on all days of the week, all alcoholic beverages for consumption on its premises. The licenses for 1958 are evidenced by a combination license issued on December 31, 1957, upon payment of a fee of $45 under the Revised Ordinances of Boston (1947) c. 40A, § 1, cl. 68, for the common victualler's license and a fee of $1,400 under G. L. c. 138, § 12, for the alcoholic beverages license.

The plaintiff's premises have been maintained in a safe and proper manner, and have been inspected from time to time by the building department of the city, which has certified to their safety for occupancy as a restaurant with a seating capacity of 105. In the restaurant food

and drink are sold for cash to members of the general public without admission fee, cover charge, or minimum charge.

The plaintiff maintains two television sets and a radio set by which on weekdays it makes regularly broadcasted programs available to customers without any payment or deposit of money over and above their payment for food, drink, or other refreshment sold to them for cash. It also maintains a coin-operated "juke box," which is a phonograph, with a capacity for one hundred "two play" records. This is an automatic electrical device which furnishes recorded music, and through its use on lawful hours on weekdays the plaintiff makes available to customers "musical entertainment provided by mechanical or electrical means" on a voluntary basis according to their own selection upon deposit of a coin, but without other payment or deposit of money over and above their payment for food, drink, or other refreshment sold to them for cash.

The plaintiff contends that it has the right to furnish to customers, at lawful times and in a proper manner and in compliance with all other pertinent laws, public entertainment on weekdays through the use of television, radio, and "music provided by mechanical or electrical means" without obtaining any license pursuant to G. L. c. 140, § 183A, or paying any license fee under cl. 92 of the ordinance.

General Laws c. 140, § 183A, as amended by St. 1936, c. 71, § 1, provides: "No innholder, common victualler or person owning, managing or controlling a café, restaurant or other eating or drinking establishment shall, as a part of his usual business, offer to view, set up, set on foot, maintain or carry on a concert, dance, exhibition, cabaret or public show of any description at which food or drink or other refreshment is sold for cash, or in connection with which, after free admission, music or other amusement is provided or furnished upon payment or deposit of money, either as a cover charge or in payment for food, drink or other refreshment, unless and until a license therefor, to be exer-

cised on week days only, has been issued by the licensing authorities . . . . Such licenses, unless sooner revoked, shall expire on December thirty-first of each year."

Chapter 40A,[1] § 1, provides in part: "Fees and charges are hereby fixed under chapter 222 of the acts of 1949 as follows: . . . (92) *Entertainment License.* The fee for a license granted by the licensing board under section 183A of chapter 140 of the General Laws (including a license so granted to an innholder or common victualler) shall be $100.00; provided, that in cases where the entertainment is solely through the use of television, radio, and music provided by mechanical or electrical means, the fee shall be $50.00; and provided also, that in cases where the entertainment is solely provided by not exceeding four instrumentalists, the fee shall be $75.00."

On December 30, 1957, the board issued to the plaintiff upon the payment of $50 a weekday entertainment license under cl. 92 for radio, phonograph, and television for the year 1958.

1. There is first presented the question whether the plaintiff's activities fall within § 183A. The initial problem of construction is whether "in connection with which" refers to "usual business" or to "concert, dance, exhibition, cabaret or public show of any description." We think that the reference is to the latter. In the interests of brevity we refrain from spelling out the defendants' detailed argument to the contrary. Our interpretation means that in order to sustain the board's authority, the plaintiff's activities must constitute a "public show of any description," inasmuch as the other words, "concert, dance, exhibition, cabaret," are obviously inapplicable. We do not agree with the plaintiff that § 183A, which mentions no hours, is only a "night club" statute, and confined to "live" entertainment. We believe that the statutory purpose is to regulate anyone who provides entertainment in connection with the business of furnishing "food or drink or other refreshment." Granting that

---

[1] Effective December 1, 1956. — REPORTER.

television might have been unknown when § 183A was drafted, the very broad language, "public show of any description," must be taken to comprehend new modes of entertainment. See *Commonwealth* v. *Welosky,* 276 Mass. 398, 403. We, therefore, do not accept the plaintiff's argument that § 183A does not include a "juke box" because of the omission of the specific, but narrower, phrase found in § 181, "amusement . . . furnished upon a deposit of money in a coin controlled apparatus." The greater phrase used includes the lesser. Further detailed discussion of the arguments respecting this aspect of statutory interpretation would profit our jurisprudence nothing.

2. Another question of construction is presented by the last sentence of § 183A, which provides that "no fee shall be chargeable" for the license thereby required "to a person who, for the period covered by such license, is also licensed under section two." General Laws c. 140, § 2, reads in part: "Licensing authorities may grant licenses to persons to be innholders or common victuallers." The plaintiff argues that because it is already licensed as a common victualler under c. 40A, § 1, cl. 68, it cannot be made to acquire an entertainment license under cl. 92, which expressly refers to § 183A.

The answer to this argument is found in St. 1949, c. 222, entitled "An Act empowering the city of Boston to fix by ordinance certain fees and charges." The said act provides in § 1, "The city of Boston may from time to time, by ordinance, fix the fees for all licenses and permits granted under the authority of statutes where the entire proceeds of the fee form part of the income of the city," with exceptions not presently material. Section 3 reads: "A fee or charge fixed by ordinance under this act shall be deemed to apply notwithstanding any general or special law heretofore passed fixing a different fee or charge or imposing any limitation on the amount thereof or designating a particular board or officer to fix said amount . . . . No general or special law hereafter passed shall, in the absence of express and explicit mention therein of this act, be construed to repeal this act

in whole or in part or to affect in any way any fee or charge theretofore or thereafter fixed by ordinance under this act."

The Legislature in c. 222 showed an intent to empower the city to fix certain license fees, such as the one before us, and to make c. 222 the sole source of power unless express mention of the act should be made in later legislation. The language of § 3 must be taken to wipe the slate clean of prior limitations even though expressed in the formally prohibitory words, "no fee shall be chargeable."

3. The plaintiff raises constitutional questions. In so doing it asserts that § 183A "is clearly a censorship statute," and that "§ 183A and cl. 92 do not regulate, in any respect or to any extent, the place or time or manner of, nor the machine or device employed in, such 'entertainment,' but *directly* and *immediately* and *exclusively* apply their force to the actual *content* of the entertainment furnished." With these assertions we are not in accord. Section 183A is not a censorship statute. We are of opinion that the purpose of § 183A and of the ordinance is the preservation of public order at public entertainments. We fail to perceive any prior restraint or any attempt to impinge upon the constitutional guaranties of free speech and freedom of the press. We regard such cases as *Joseph Burstyn, Inc.* v. *Wilson,* 343 U. S. 495, and *Brattle Films, Inc.* v. *Commissioner of Pub. Safety,* 333 Mass. 58, as inapplicable to the statute and ordinance rightly construed. In *Jaffarian* v. *Building Commr. of Somerville,* 275 Mass. 267, 271, this court said in an opinion by Chief Justice Rugg, "The right to require licenses is based on the conception that places of public amusement may require supervision by public authorities to the end that they may not degenerate and become obnoxious to the public welfare." See *Opinion of the Justices,* 247 Mass. 589, 594-595.

The license by the express terms of § 183A is granted on an annual basis. Not only would it be impractical and beyond all reasonable possibility to pass upon the entire next year's programs in granting a license, but there is no sugges-

tion that the board ever attempted to use the licensing requirement as a cloak for exercising as to even one day's program a censorship power which the statute does not confer.

We are mindful of the plaintiff's argument that § 183A establishes no standards for the granting or denial of licenses, and is, therefore, void under the Fourteenth Amendment to the Constitution of the United States. But the purpose being the preservation of public order at public entertainments, greater particularity was not required. Instead of attempting to make an advance delineation of all possible circumstances in which applications might be made or licenses granted, § 183A confers upon the licensing authorities a "quasi judicial authority to determine the facts and to pass upon the application in each instance under the serious sense of responsibility imposed upon them by their official positions and the delicate character of the duty entrusted to them." *Butler* v. *East Bridgewater*, 330 Mass. 33, 37. They cannot act in an unreasonable or arbitrary manner. *Commonwealth* v. *McGann*, 213 Mass. 213, 215. *General Outdoor Advertising Co. Inc.* v. *Department of Pub. Works*, 289 Mass. 149, 192. *State* v. *Cox*, 91 N. H. 137, 144, affd. sub nom. *Cox* v. *New Hampshire*, 312 U. S. 569, 576. See *Hannan* v. *Haverhill*, 120 F. 2d 87, 89 (1st Cir.). They cannot function as a board of censors. Each individual application must be determined on its own set of facts. The licensing procedure is appropriate to afford notice to the municipal authorities of locations where large numbers of people might gather at one time under a single roof. See *Opinion of the Justices*, 247 Mass. 589, 594–595. It is likewise proper that the operation of radios, television sets, and "juke boxes" in restaurants, bars, taverns, and other eating or drinking places not be allowed to become a public nuisance due to noise. That the plaintiff's premises have never become a nuisance is not decisive. *Boston* v. *Schaffer*, 9 Pick. 415, 419. *Jaffarian* v. *Building Commr. of Somerville*, 275 Mass. 267, 271. *Murphy* v. *California*, 225 U. S. 623, 629. *Adams* v. *Tanner*, 244 U. S. 590, 594.

We do not accept the contention that Congress has so

legislated[1] that the States have been excluded from dealing with television and radio as a matter of local public order. The statements in *Allen B. Dumont Labs. Inc.* v. *Carroll*, 184 F. 2d 153, 156 (3d Cir.), must be read in the light of the question before the court, which was one of attempted State censorship.  As the court said, also at page 156, "Program control was entrusted to the Federal Commission and it is an effective one."

Another case relied upon by the plaintiff which must be read within the scope of the question presented is *Brattle Films, Inc.* v. *Commissioner of Pub. Safety*, 333 Mass. 58. We were there dealing with a statute, G. L. c. 136, § 4, which required advance approval by public officials of a motion picture film intended for public entertainment on the Lord's day "as being in keeping with the character of the day and not inconsistent with its due observance."  The holding (page 62) was that the statute "as applied to the plaintiff in the circumstances set forth in the bill of complaint is unconstitutional and void."  In a companion case brought by a motion picture distributor, *Times Film Corp.* v. *Commissioner of Pub. Safety*, 333 Mass. 62, which raised a similar question under the same statute, we dismissed the petition without prejudice, saying (page 63), "It is not to be assumed that the respondent, who is a public officer and a defendant in the *Brattle Films* case, will not carry out his duty under the law."

4. A final decree is to be entered declaring that the plaintiff's activities as set forth in its bill fall within G. L. c. 140, § 183A, and Revised Ordinances of Boston (1947) c. 40A, § 1, cl. 92, the provisions of which are not unconstitutional or void as applied to the plaintiff.

*So ordered.*

---

[1] Communications act of 1934, §§ 2 (a), 3 (b, d), 303 (g), 48 Stat. 1064, 1065, 1082, as amended, 47 U. S. C. §§ 152 (a), 153 (b, d), 303 (g) (1952). Communications act of 1934, § 326, 48 Stat. 1091, as amended, 47 U. S. C. § 326 (1952).