DEMETRIOS KONSTANTOPOULOS vs. TOWN OF WHATELY
& others.[1]

Franklin. April 6, 1981. — July 27, 1981.

Present: HENNESSEY, C.J., BRAUCHER, LIACOS, ABRAMS, & NOLAN, JJ.

*Probate Court*, Jurisdiction. *Jurisdiction*, Probate Court. *Court Reorganization Act*. *Chief Administrative Justice*. *Quasi Judicial Tribunal*. *Administrative Law*, Judicial review, Hearing. *License*. *Public Entertainment*. *Due Process of Law*, Revocation of license. *Notice*.

The grant of general equity jurisdiction to the Probate and Family Court Department by G. L. c. 215, § 6, in "matters . . . cognizable under the general principles of equity jurisprudence" does not comprehend an action seeking review of the revocation of an entertainment license by a municipal licensing board acting under G. L. c. 140, § 183A. [126-129]

Where the Probate and Family Court Department lacked subject matter jurisdiction over an action commenced in that department, the judge should not have dismissed the complaint on that ground, but should instead have requested the Chief Administrative Justice to transfer the case, or the judge, or both, to the appropriate department of the Trial Court. [129-131]

The holder of an entertainment license issued under G. L. c. 140, § 183A, was vested with a constitutionally protected interest, of which municipal authorities could not deprive him without procedural due process. [131-133]

With respect to a hearing before the licensing board of a town, after which an entertainment license issued under G. L. c. 140, § 183A, was revoked for unspecified reasons, neither the board's oral notification of the licensee one and one-half hours before the hearing, nor a letter from the board some days earlier warning him of adverse action if certain safety improvements were not made to the licensed premises, was notice comporting with the constitutional standard of procedural due process. [134-136]

---

[1] The other defendants in this case are the board of selectmen of the town of Whately, individually and in their representative capacity. The board also serves as the licensing commission for the town.

The proper standard for judicial review in cases where a municipal licensing board has revoked an entertainment license under G. L. c. 140, § 183A, is the substantial evidence test. [136-137]

CIVIL ACTION commenced in the Franklin Division of the Probate and Family Court Department on April 18, 1980.

The case was heard by *Keedy*, J.

CIVIL ACTION commenced in the Franklin Division of the Probate and Family Court Department on July 24, 1980. Questions of law were reported to the Appeals Court by *Nuciforo*, J.

The Supreme Judicial Court consolidated the cases and ordered direct appellate review on its own initiative.

*Edward W. Pepyne, Jr.*, for the defendants.

*Donal T. Dunphy* for the plaintiff.

NOLAN, J. In this consolidated appeal we are asked to consider whether the Probate Court had subject matter jurisdiction over two separate actions brought by the plaintiff for injunctive and declaratory relief against the town licensing authorities who had revoked his entertainment license under G. L. c. 140, § 183A. We conclude that the Probate Court lacked subject matter jurisdiction over these actions.

The plaintiff is the owner and operator of the Castaway Lounge located in Whately, Massachusetts. Since April, 1977, he has been licensed to provide live entertainment, including exotic dancing, at his lounge. In December, 1979, the plaintiff sought to renew his license for 1980. The board of selectmen (board) renewed the license. The 1980 license issued to the plaintiff did not specifically include exotic dancing.

Under authorization by license, the plaintiff had presented exotic dancing, performed by women, since 1977. On April 12, 1980, the plaintiff advertised an exotic dance performance by males. The performance took place on April 14. Both before and after the performance, the board received various complaints, including complaints that the numbers in attendance exceeded the permissible capacity of the building. On April 16, 1980, the board notified the plaintiff at

5:30 P.M. that a special meeting would be held at 7 P.M. that evening. At the meeting the board revoked his live entertainment license, but granted him permission to continue to provide female exotic dancing through April 19, to avoid liability on a contract.[2]

On April 18, the plaintiff sought a temporary restraining order from the Probate Court, on the ground that a revocation of his license would cause him immediate and irreparable monetary injury, loss, and hardship. The Probate Court judge temporarily restrained the licensing board from revoking the plaintiff's entertainment license until there was a judicial determination on the matter.

Thereafter, the plaintiff filed an action in the Probate Court requesting that the court reform the license to conform to the mutual intent of the parties that the 1980 license include exotic dancing. Additionally, he sought a declaration that the license was illegally revoked because of inadequate notice and hearing, and a declaration that the revocation was arbitrary and capricious. Further, he requested the court to enjoin the board from revoking his entertainment license. In response, the board moved to dismiss the action for lack of jurisdiction over the subject matter. It also moved for summary judgment. The board argued that the hearing given to the plaintiff on April 16, 1980, adequately met the requirements of G. L. c. 140, § 183A. Alternatively, the board asserted that the plaintiff had never properly filed a written application for the 1980 license, and had been issued a license which did not permit exotic dancing. Therefore, it contended, the plaintiff was not in fact entitled to any hearing upon revocation.

---

[2] As additional background, we note that on March 27, 1980, the board had written to the plaintiff, giving him until April 15, 1980, to install "crash bars" on the doors at the Castaway Lounge. The certified letter informed the plaintiff that if the "crash bars" were not installed by April 15, 1980, the board would take action against him. The bars were not installed as of April 15, 1980. After the hearing on April 16, the board notified the plaintiff that if the "crash bars" were not installed by April 30, 1980, then his certificate of occupancy and his liquor license would be revoked. The "crash bars" were in place on April 23, 1980.

After a hearing on the merits the judge found that all of the parties knew and understood that the plaintiff was entitled to provide exotic dancing under the 1980 license. The judge declared that, on the basis of the mutual understanding of the parties, the plaintiff was entitled to have an amended license issued to him. The judge further declared that the board had improperly revoked the plaintiff's license because it had not given the plaintiff an adequate notice and hearing. Therefore, the plaintiff's entertainment license was still in effect. The judge concluded that the decision was without prejudice to the right of the board to conduct another revocation hearing. The board appealed this judgment.

Subsequently, on July 9, 1980, the board held a second revocation hearing in accordance with the procedural guidelines set forth by the judge in the first action.[3] It again voted to revoke the plaintiff's entertainment license. The plaintiff returned to Probate Court. In a second action, he sought a declaration that his entertainment license had been again improperly revoked. He also sought injunctive relief. The board again contended that the Probate Court lacked subject matter jurisdiction over the action. The second Probate Court judge issued a temporary restraining order against the board to prevent the license revocation, and reserved and reported the jurisdictional issue to the Appeals Court.[4] G. L. c. 215, § 13. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). Mass. R. Civ. P. 5, as amended, 368 Mass. 905 (1975). We consolidated the two cases and transferred them to this court on our own motion. G. L. c. 211A, § 10 (A).

1. *Subject matter jurisdiction.* In deciding whether the Probate Court properly exercised jurisdiction over the subject matter of this case, we must determine whether the

---

[3] The Probate Court judge had stated that the plaintiff "was entitled to a reasonable notice of the hearing, some notice of the nature of the hearing and an opportunity to appear personally and with counsel and to defend himself against the proposed action of the Board or the charges lodged against him. The oral notice given an hour and a half before the Special Meeting of the Selectmen was not adequate."

[4] See text of reported questions at note 11, *infra.*

specific matter before us falls within the general grant of jurisdiction given to the Probate Courts. See *Glick* v. *Greenleaf*, 383 Mass. 290, 295 (1981). General Laws c. 215, § 6, confers upon the Probate Courts jurisdiction over "all cases and matters of equity cognizable under the general principles of equity jurisprudence."[5] See J.R. Nolan, Equitable Remedies § 39 (1975). We have construed G. L. c. 215, § 6, as conferring general equity jurisdiction on the Probate Courts. See *Williams College* v. *Attorney Gen.*, 375 Mass. 220, 222-223 (1978). Indeed, we found that "the Legislature intended to make requirements for commencing and prosecuting suits in equity in both the Superior and Probate courts as closely similar as possible." *Anderson* v. *Anderson*, 354 Mass. 565, 567 (1968). See *Wood* v. *Wood*, 369 Mass. 665, 668-669 (1976).

Nevertheless, despite the breadth of this jurisdictional grant in equity, the Probate Courts remain courts of limited jurisdiction. Cf. *Chakrabarti* v. *Marco S. Marinello Assocs.*, 377 Mass. 419 (1979). The merger of law and equity under the Massachusetts Rules of Civil Procedure did not extend the jurisdiction of the Probate Courts. *Wood* v. *Wood*, 369 Mass. 665, 668 (1976). See Mass. R. Civ. P. 1, 18(a), and 82, 365 Mass. 730, 764, 843 (1974). Similarly, G. L. c. 231A, § 1, authorizing courts, including the Probate Courts, to grant declaratory relief, does not expand the jurisdiction of the courts upon which it confers power to render declaratory decrees. *Sisters of the Holy Cross* v. *Brookline*, 347 Mass. 486, 491 (1964). Rather, the statute makes it clear that this power is conferred on the

---

[5] General Laws c. 215, § 6, as appearing in St. 1975, c. 400, § 55, provides in relevant part, and with an immaterial exception, that: "Probate courts shall have original and concurrent jurisdiction with the supreme judicial and superior courts of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, shall be courts of general equity jurisdiction. . . .; provided, however, that in proceedings of which probate courts have jurisdiction by reason of the provisions of this paragraph a plaintiff, defendant, or intervener may, within seven days after proper service has been made upon all parties, remove the case to the superior court."

courts "within their respective jurisdictions." G. L. c. 231A, § 1. See *Gardner* v. *Berkman*, 365 Mass. 481, 482 (1974). Cf. *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). Accordingly, we must determine whether the grant of general equity jurisdiction to the Probate Court comprehends an action seeking review of the revocation of an entertainment license under G. L. c. 140, § 183A. See *Williams College* v. *Attorney Gen.*, 375 Mass. 220, 222-223 (1978); *Homestead* v. *Whately*, 11 Mass. App. Ct. 985 (1981); *Foster* v. *Evans*, 10 Mass. App. Ct. 753 (1980), further appellate review granted, 382 Mass. 692 (1981). Cf. *Building Inspector of Northampton* v. *Springfield Advertising Co.*, 353 Mass. 763 (1968); *Duane* v. *Quincy*, 350 Mass. 59, 62 (1966). We turn to a discussion of the first action brought by the plaintiff.

2. *Hearing on the merits*. It seems clear that review of an action of an administrative board in suspending or revoking a license is not a matter cognizable under the general principles of equity jurisprudence. Instead of a proceeding in equity, the traditional remedy was an action at law by writ of certiorari. *Administrator of the OPA* v. *Chook*, 320 Mass. 187, 191-192 (1946). See, e.g. *Bennett* v. *Aldermen of Chelsea*, 361 Mass. 802 (1972); *Marrone* v. *City Manager of Worcester*, 329 Mass. 378 (1952); *Morley* v. *Police Comm'r of Boston*, 261 Mass. 269 (1927), cert. denied sub nom. *Morley* v. *Wilson*, 276 U.S. 625 (1928). See also *Springfield Preservation Trust, Inc.* v. *Springfield Historical Comm'n*, 380 Mass. 159, 161 (1980); *Scudder* v. *Selectmen of Sandwich*, 309 Mass. 373 (1941).

Although Mass. R. Civ. P. 81 (b), 365 Mass. 841 (1974), abolished the writ of certiorari, relief in the nature of certiorari is available in the Superior Court pursuant to G. L. c. 249, § 4. *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 758 (1976). See, e.g., *Foster from Gloucester, Inc.* v. *City Council of Gloucester*, 10 Mass. App. Ct. 284 (1980). The relief sought by the plaintiff — construction of the requirement in G. L. c. 140, § 183A, for a "hearing" and review of

the grounds on which the board based its revocation decision — is precisely the relief granted under the traditional writ of certiorari. See *Scudder* v. *Selectmen of Sandwich*, 309 Mass. 373, 376-377 (1941); *Dixie's Bar, Inc.* v. *Boston Licensing Bd.*, 357 Mass. 699, 703 (1970). Clearly, declaratory relief construing the provisions of G. L. c. 140, § 183A, would be appropriate in a court of competent jurisdiction. See *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston*, 338 Mass. 199 (1958). Cf. *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 758-759 (1976). However, declaratory relief under G. L. c. 231A, § 1, is not a substitute remedy for an action in the nature of a writ of certiorari to review the merits of a discretionary decision made by licensing authorities. *Johnson Prods., Inc.* v. *City Council of Medford*, 353 Mass. 540, 545, appeal dismissed, 392 U.S. 296 (1968). Consequently, since the Probate Court judge did not follow the procedural alternatives to dismissal allowed by statute and discussed below, he incorrectly assumed jurisdiction over the subject matter of this case.

3. *Procedure*. Although we find that the Probate Court did not have jurisdiction under G. L. c. 215, § 6, over the subject matter of the first case on appeal here, we nevertheless conclude that a Probate Court judge faced with such a serious jurisdictional issue should not, in the future, dismiss a complaint on that ground. Instead, the proper procedure is for the judge to ask the Chief Administrative Justice to transfer the case, or the judge, or both, to the appropriate department of the Trial Court. See G. L. c. 211B, § 9, inserted by St. 1978, c. 478, § 110. See also G. L. c. 211, § 4A. Cf. *Glick* v. *Greenleaf*, 383 Mass. 290, 295 n.7. (1981).

We base this conclusion on the legislative intent to minimize subject matter jurisdictional concerns which we find expressed in G. L. c. 211B, inserted by St. 1978, c. 478, § 110, reorganizing the court system in Massachusetts. See e.g., G. L. c. 211B, § 1 (consolidating the several independent courts, including the Probate and Superior courts, into departments of a single Trial Court of the Commonwealth);

G. L. c. 211B, § 9 (granting to the Chief Administrative Justice of the Trial Court the power to assign freely a judge appointed to one department of the trial court to any other department of the court). See also St. 1978, c. 478, § 1: "It is the intent of the general court to promote the orderly and effective administration of the judicial system of the commonwealth. To that end the provisions of this act provide for an administrative consolidation of the several courts of trial jurisdiction, so as to encourage a broader availability of personnel and other resources for the hearing of all causes on an equitable basis by the several justices of the trial court . . . . ."[6] On the impact of court reorganization on jurisdiction, compare generally Report on the State of the Massachusetts Courts, Governor's Select Committee on Judicial Needs (Dec. 1976), with The Time Has Come to Act, A Special Report of the Judicial Council of Massachusetts (Jan. 1977).

We support this conclusion further by noting that the board in this case could have removed the case from the Probate Court to the Superior Court as a matter of right under G. L. c. 215, § 6. It chose to file a motion to dismiss the case, argue the case on the merits, and then rely on its jurisdictional argument on appeal, rather than to seek a removal. Its failure to seek removal does not, of course, serve to create jurisdiction in the Probate Court. See *Litton Business Syss., Inc.* v. *Commissioner of Revenue*, 383 Mass. 619, 622 (1981) (subject matter jurisdiction cannot be conferred by consent, conduct, or waiver). However, the existence of this additional statutory alternative, designed to expedite the orderly administration of justice, further militates against dismissing such an action on jurisdictional grounds in the future.

---

[6] We take note of the fact that, in Franklin County where this suit was brought, there is not a continuous Superior Court sitting. Dismissing an action brought in the Probate Court under these circumstances would circumvent the legislative intent to "encourage a broader availability of personnel . . . for the hearing of all causes." Cf. *Nantucket* v. *Beinecke*, 379 Mass. 345, 352 (1979).

Although, for reasons already discussed, the legality of the license revocation here is not properly before us for decision, we will briefly express our opinion upon the questions presented. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). A hearing in the second revocation case is already pending. Therefore, we need not decide whether it would have been otherwise appropriate for us to order the judge in the first case to seek a letter from the Chief Administrative Justice granting jurisdiction nunc pro tunc.

4. *Legal standards.* General Laws c. 140, § 183A, as amended through St. 1936, c. 71, § 1, governing entertainment licenses, confers broad discretion upon local licensing authorities, "who may upon written application and upon such terms and conditions as they may prescribe, grant such a license for any or all of the purposes hereinbefore described and may, after written notice to the licensee, suspend or, after hearing revoke the same."

The board here contends that the notice and hearing given to the plaintiff adequately met the requirements of G. L. c. 140, § 183A. Noting that § 183A does not specify the type of notice and hearing required, the board compares the statute with G. L. c. 140, § 9, which specifically requires that a licensee must be afforded notice prior to hearing and a reasonable opportunity to be heard at a revocation hearing for an innholder's or common victualler's license. If the Legislature intended this type of notice and hearing under § 183A, the board concludes, it would have included specific language in the statute.

We disagree. A statute providing that "there shall be a 'hearing in the case,' . . . fairly implies that the licensee is to be notified, and to have opportunity to be heard . . . ." *Young* v. *Blaisdell*, 138 Mass. 344, 346 (1885). See *Piona* v. *Alcoholic Beverages Control Comm'n*, 332 Mass. 53, 56 (1954); *Moran* v. *School Comm. of Littleton*, 317 Mass. 591, 594-595 (1945); *Farrell* v. *Mayor of Revere*, 306 Mass. 221, 225 (1940).

Furthermore, licensing authorities act in a quasi judicial capacity when revoking licenses under § 183A. See *Mosey*

*Cafe, Inc.* v. *Licensing Bd. for Boston,* 338 Mass. 199, 205 (1958). "The court's statement in *Mosey Cafe* that a licensing authority has a 'quasi-judicial' function [under § 183A] and may not act unreasonably or arbitrarily necessarily requires that formal notice be given a licensee that adverse action is contemplated, and that an opportunity to respond to and contest the action be afforded." *Sport Lounge, Inc.* v. *Glennon,* C.A. No. 80-0056-N at 6-7 (D. Mass. Sept. 5, 1980). Cf. *Club Stanyon St.* v. *Utah Liquor Control Comm'n,* 615 P.2d 435, 436 (Utah 1980).

Moreover, the same result obtains if we apply the principle that a statute must be construed to avoid the conclusion that it is unconstitutional. *Milligan* v. *Board of Registration in Pharmacy,* 348 Mass. 491, 500 (1965). See *Higgins* v. *License Comm'rs of Quincy,* 308 Mass. 142, 145 (1941) (notice to the licensee setting forth the grounds upon which the board intends to proceed is a substantive right); *O'Leary, petitioner,* 325 Mass. 179, 182 (1950) (statute not unconstitutional as wanting a provision for notice, because statute impliedly calls for notice in accordance with elements inherent in due process).

We hold that the plaintiff's entertainment license clothes him with a constitutionally protected interest of which he cannot be deprived without procedural due process. This conclusion involves an analysis of the nature of the interest at stake. See *Lotto* v. *Commonwealth,* 369 Mass. 775, 777 (1976).

"What was said of automobile drivers' licenses in *Bell* v. *Burson,* 402 U.S. 535, 539 (1971), is even more true of occupational licenses . . .: 'Once licenses are issued, . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.'" *Barry* v. *Barchi,* 443 U.S. 55, 69-70 (1979) (Brennan, J., concurring in part). Although § 183A grants broad discretion to the licensing authorities, we be-

lieve the same principles apply to the revocation of an enter-
tainment license as to occupational and business licenses.
"This is but an application of the general proposition that
relevant constitutional restraints limit state power to termi-
nate an entitlement whether the entitlement is denominated
a 'right' or a 'privilege.'" *Bell* v. *Burson,* 402 U.S. 535, 539
(1971). "It requires no extended discussion to conclude that
the rules defining plaintiff's interest in its license do, as a
matter of social and economic reality, create a property
right." *Trumbull Div., Owens-Corning Fiberglass Corp.*
v. *Minneapolis,* 445 F. Supp. 911, 916 (D. Minn. 1978). See
also, e.g., *Pence* v. *Kleppe,* 529 F.2d 135, 140-141 (9th Cir.
1976); *Page* v. *Jackson,* 398 F. Supp. 263, 266-268 (N.D.
Ga. 1975); *Oklahoma Alcoholic Beverage Control Bd.* v.
*Seely,* 621 P.2d 534, 536-537 (Okla. 1980). Cf. *New Motor
Vehicle Bd.* v. *Orrin W. Fox Co.,* 439 U.S. 96, 105-106
(1978). But see *Barry* v. *Barchi,* 443 U.S. 55, 64 n.11
(1979).

We base our conclusion that the plaintiff possesses a pro-
tectable interest in his entertainment license under § 183A
at least partially on the fact that revocation of an already is-
sued license is distinguishable from a decision not to issue a
license in the first instance. See *Medina* v. *Rudman,* 545
F.2d 244, 250-251 (1st Cir. 1976), cert. denied, 434 U.S. 891
(1977) (even where State may regulate under its police
powers by issuing licenses on a discretionary basis, once a li-
cense is granted, a right or status recognized under State
law comes into being, and revocation of the license requires
notice and hearing). See also *Shamie* v. *Pontiac,* 443 F.
Supp. 679, 682-683 (E.D. Mich. 1977), modified on appeal,
620 F.2d 118 (1980). Compare *Opinion of the Justices,* 368
Mass. 857, 862-863 & n.6 (1975) (although liquor license has
been held to confer no property rights on the licensee, such
license may not be revoked arbitrarily). Cf. *Kenosha* v.
*Bruno,* 412 U.S. 507, 515 (1973). But see *Lotto* v. *Com-
monwealth,* 369 Mass. 775 (1976).[7]

---

[7] We do not decide what rights, if any, are granted to the licensee under
State law in the application for, suspension of, or failure to renew a li-
cense under § 183A. Cf. *Commonwealth* v. *Gordon,* 354 Mass. 722

Having concluded that the plaintiff is entitled to due process protection prior to the revocation of his entertainment license under § 183A, we must now determine what process is due. *Lotto* v. *Commonwealth,* 369 Mass. 775, 777 (1976). *Mathews* v. *Eldridge,* 424 U.S. 319, 335 (1976). As an initial point, it is clear that the town licensing authorities are not an "agency" under the State Administrative Procedure Act, G. L. c. 30A. *Commonwealth* v. *Blackgammon's, Inc.,* 382 Mass. 610, 626 (1981). Therefore, the procedures outlined in G. L. c. 30A, § 13, are not applicable.

We recognize that the purpose of § 183A is the preservation of public order at public entertainments. *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston,* 338 Mass. 199, 204 (1958). However, in addition to whatever property rights a licensee has in his entertainment license, the statute implicates as well the licensee's rights under the First Amendment to the United States Constitution, and art. 16 of our Declaration of Rights, as amended by art. 77 of the Amendments to the Massachusetts Constitution.[8] See *Commonwealth* v. *Sees,*

---

(1968); *First Church of Christ, Scientist* v. *Alcoholic Beverages Control Comm'n,* 349 Mass. 273 (1965); *Clarke* v. *Board of Collegiate Auth.,* 327 Mass. 279 (1951).

[8] Neither party has challenged the facial constitutionality of G. L. c. 140, § 183A. Indeed, at oral argument plaintiff's counsel expressly waived any constitutional issues. We should not anticipate constitutional questions. Cf. *Revere* v. *Aucella,* 369 Mass. 138, 146 (1975), appeal dismissed sub nom. *Charger Invs., Inc.* v. *Corbett,* 429 U.S. 877 (1976). We note, however, that c. 140, § 183A, provides no objective standards to limit the licensing authorities' discretion in selecting the policies to be followed in granting, denying, suspending, or revoking licenses. Cf. *Fitchburg* v. *707 Main Corp.,* 369 Mass. 748, 752 (1976); *Yenofsky* v. *Silk,* 305 F. Supp. 991, 995 (D. Mass. 1969). In this regard, see the decision of a three-judge panel of the United States District Court in *Gallarelli* v. *White,* C.A. No. 73-2587-G (D. Mass. Sept. 21, 1973), holding the licensing provisions of G. L. c. 140, §§ 181-182 unconstitutional under the First and Fourteenth Amendments to the United States Constitution. Compare the notice and hearing requirements of G. L. c. 140, § 181, as amended by St. 1979, c. 358, § 3 with earlier versions of § 181. See also *Goldstein* v. *Nantucket,* C.A. No. 79-1455-Z (D. Mass. Sept. 25, 1979) (finding a town licensing by-law unconstitutional as applied). Cf. *Schad* v. *Mt. Ephraim,* 452 U.S. 61 (1981).

374 Mass. 532, 536-537 (1978). But cf. *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston,* 338 Mass. 199, 204-205 (1958). Accordingly, we construe "hearing" in G. L. c. 140, § 183A, as requiring, at a minimum, the procedure set forth by the judge providing for a revocation hearing, preceded by adequate notice setting forth the charge which forms the basis for the revocation.[9]

The oral notice given one and one-half hours prior to the revocation hearing in this case, did not comport with a rudimentary standard of due process. See *Manchester* v. *Selectmen of Nantucket,* 335 Mass. 156, 158-159 (1956) (the purpose of notice is to inform the license holder with reasonable particularity of the charges that he will be called upon to meet at the hearing so that he can properly prepare his defense). Consequently, the initial revocation of the plaintiff's entertainment license was improper. Cf. *Newcomb* v. *Aldermen of Holyoke,* 271 Mass. 565, 568 (1930).

The board further contends that it gave adequate notice to the plaintiff by means of the letter warning him of adverse action if he failed to install "crash bars" on the doors of his lounge. See note 2, *supra.* This contention is unpersuasive. The plaintiff stated that the letter did not give the time or place of a hearing nor did it indicate that a revocation hearing would ensue if he failed to comply. Furthermore, since the board did not give a statement of reasons for its initial revocation, and conflicting testimony was presented to the court, it is not clear that the plaintiff's failure to in-

---

[9] Since the licensing authorities acted in a quasi judicial capacity, see *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston,* 338 Mass. 199, 205 (1958), the plaintiff was entitled to a full and impartial hearing which, although not necessarily conforming to the procedural and evidentiary rules applicable to proceedings in the courts, would assure that substantial justice would be done. As one element of such a hearing, the plaintiff was entitled to an opportunity to call witnesses and cross-examine the opposing witnesses, if any, in a reasonable fashion. *Foster from Gloucester, Inc.* v. *City Council of Gloucester,* 10 Mass. App. Ct. 284, 291-292 (1980), and cases cited. See also *Trumbull Div., Owens-Corning Fiberglass Corp.* v. *Minneapolis,* 445 F. Supp. 911, 917 (D. Minn. 1978); *Page* v. *Jackson,* 398 F. Supp. 263, 269 (N.D. Ga. 1975).

stall "crash bars" by April 15, 1980, was the cause of the revocation.[10] It is possible, for example, that the board was attempting, perhaps impermissibly, to censor the type of exotic dancing presented at the lounge. See *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston,* 338 Mass. 199, 205 (1958) (licensing authorities may not function as a board of censors). See also note 8, *supra.*

Since the licensing authorities chose to revoke, rather than suspend, the plaintiff's license, we need not decide whether the alleged public safety emergency conditions cited by the board would have justified a summary suspension of the plaintiff's license pending the revocation hearing. See *Mackey* v. *Montrym,* 443 U.S. 1, 13-15, 18-19 (1979). Cf. *Trumbull Div., Owens-Corning Fiberglass Corp.* v. *Minneapolis,* 445 F. Supp. 911, 917 n.4 (D. Minn. 1978).

We turn now to the standard of review to be applied in an entertainment license case. We have stated that, by accepting a license revocable at the discretion of the granting authority, the licensee "takes it subject to that infirmity, and he has no just ground of complaint if the power to revoke is properly exercised before the term of the license has expired." *Marrone* v. *City Manager of Worcester,* 329 Mass. 378, 379 (1952), quoting from *Woodbury* v. *Municipal Council of Gloucester,* 318 Mass. 385, 388-389 (1945).

However, we have recently decided that, in a certiorari case, the appropriate standard of review must be determined according to "the nature of the action sought to be reviewed." *McSweeney* v. *Town Manager of Lexington,* 379 Mass. 794, 800 (1980), quoting from *Boston Edison Co.* v. *Boston Redevelopment Auth.,* 374 Mass. 37, 49 (1978).

---

[10] We note, for example, that the board also argues that the plaintiff's noncompliance with license regulation number 5, that "muscle or suggestive dancing of any description or form is prohibited" constituted a ground for revocation of his license. While such noncompliance may be sufficient cause for revocation, the plaintiff would still be entitled to prior notice setting forth the specific charge forming the basis for the revocation.

The State Administrative Procedure Act, G. L. c. 30A, § 14 (7)(*e*), requires the application of the substantial evidence test as the standard of review. Because we found no difference in the "nature of the claim" in a liquor license revocation appeal and an appeal from revocation of a common victualler's license, we extended the substantial evidence test as the proper standard of review to cases where a local licensing board has revoked a common victualler's license under G. L. c. 140, § 9. *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.,* 380 Mass. 919, 924-925 (1980). The "nature of the claim" in an entertainment license revocation is virtually identical on appeal to each of these revocation proceedings. Therefore, we believe the proper standard of review in cases where a local licensing board has revoked an entertainment license under G. L. c. 140, § 183A, is the substantial evidence test.

We note additionally that, if the facts demonstrate that the plaintiff did not hold a valid entertainment license, no revocation hearing was necessary. See *White Fuel Corp.* v. *Street Comm'rs of Boston,* 289 Mass. 337, 338 (1935); *Denver Chicago Transp. Co.* v. *United States,* 183 F. Supp. 785, 789 (D. Colo. 1960), aff'd 364 U.S. 627 (1961). But see *Kline* v. *State Beverage Dep't of Florida,* 77 So. 2d 872, 874 (Fla. 1955). However, due process would require notice and a hearing before revocation if the plaintiff in fact held an entertainment license, but exceeded the terms of the license. See G. L. c. 140, § 183C.

Finally, there is no merit to the plaintiff's contention that a license may be reformed on the basis of the mutual mistake of the parties. Reformation is appropriate in the context of contracts and deeds, not licenses. See, e.g., *Franz* v. *Franz,* 308 Mass. 262, 265-266 (1941).

5. *The second revocation hearing.* After the board revoked his license for a second time, the plaintiff again sought declaratory and injunctive relief in the Probate Court. The judge granted him a temporary restraining order, and reserved and reported the three jurisdictional

questions set out in the margin.[11]  As in the first case, we conclude that review of the second license revocation is not a matter cognizable under the general principles of equity jurisprudence. (See part 1, *supra*.)  Therefore, we answer question one in the affirmative, and question two in the negative. Based on these answers, we need not reach question three.

The time period set out in G. L. c. 215, § 6, in which the board might have removed the second case to Superior Court on its own motion has lapsed, and its motion to dismiss should not be allowed. Accordingly, we remand this case to the Probate Court with instructions to the judge to ask the Chief Administrative Justice to transfer the case, or the judge, or both to the Superior Court.

*So ordered.*

---

[11] "*Question #1:*  Is the power of the Probate Court, under [G. L. c. 231A, § 1], to declare the rights of parties confined only to those cases and matters of equity which are cognizable under the principles of general equity jurisprudence, as contemplated by [G. L. c. 215, § 6], as amended?

". . . .

"*Question #2:*  Assuming that the Probate Court may declare the rights of parties in only those cases and matters which are cognizable under general principles of equity jurisprudence, is the instant case, which involves a determination of the rights of the parties under the provisions of [G. L. c. 140, § 183A], one which is cognizable under the general principles of equity jurisprudence?

". . . .

"*Question #3:*  Assuming that the instant case is a matter of equity cognizable under the general principles of equity jurisprudence, is the Probate Court excluded from jurisdiction by [§ 2 of G. L. c. 231A] which states that the declaratory procedure may be used in the *Superior Court* to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any municipal(ity)? (emphasis supplied)."