**Harold WHITENECK, Plaintiff,**

v.

**CITY OF SPRINGFIELD, et al., Defendants.**

**Civ. A. No. 83–716 Mc.**

United States District Court, D. Massachusetts.

Dec. 19, 1985.

Thomas J. Butters, Boston, Mass., for plaintiff.

Harry P. Carroll, Deputy City Solicitor, Law Dept., City of Springfield, Springfield, Mass., for defendants.

### MEMORANDUM AND ORDER ALLOWING MOTIONS FOR SUMMARY JUDGMENT

McNAUGHT, District Judge.

In this civil rights action brought pursuant to 42 U.S.C. § 1983, the parties have filed cross motions for summary judgment. The plaintiff Whiteneck alleges that defendant Donald LaDue, a police officer for the City of Springfield, Massachusetts, violated his constitutional rights by falsely arresting him and charging him with receiving stolen property. His complaint against the City of Springfield is based upon action on the part of the Springfield Police Commission in revoking his license

---

to do business as a dealer in second hand articles, for which action he asserts that the City is vicariously liable.

Many materials have been made available to us for decision of the issues presented, including the amended Complaint, the Answer, interrogatories and answers thereto, requests for admissions and the responses, an affidavit of Peter Carando, chairman of the Springfield Police Commission, his deposition, the deposition of the defendant police officer, Mr. LaDue, pages from the deposition of the plaintiff Mr. Whiteneck, and various attachments to the answers to interrogatories and the depositions.

The parties are agreed that there is no genuine dispute of material fact. It appears (although not at first glance) that they are correct. The essential facts are without dispute: those facts which determine liability or lack thereof. And those facts spell out the result: judgment for both defendants.

Whiteneck was in the business of buying and selling precious metals for four decades, according to his deposition. (Pp. 5, 6). He had a license to deal in second hand articles, issued by the Springfield Police Commission under Massachusetts General Laws, c. 140, § 54. On March 31, 1982 he purchased a gold bracelet for $133.63 (Exh. 3, Plaintiff's Memo) The seller is designated on the receipt as Anna M. Bugbee, 1014 Main St., Springfield. As a condition of being licensed, a licensee, by reason of the provisions of section 15–7, Revised Ordinances of the City of Springfield 1956, ch. 17, § 7, upon taking in articles, must hold them for thirty days, a requirement with which Mr. Whiteneck disagreed, but admitted was his understanding of the law (Plaintiff's Deposition, page 106). Despite this fact, on April 1, 1982, Mr. Whiteneck sold the bracelet (Plaintiff's Response to Defendants' Requests to Admit, No. 32) for $141.59, a profit of less than eight dollars. The owner of the bracelet estimated its value at $550.

In November of 1981, Mr. Whiteneck had been called before the Police Commission for violation of a city ordinance. At a hearing on November 10th, he was notified that any further violation might result in revocation of license, and later in the month, the Commission was notified by letter from the State Police of the receipt of information that Mr. Whiteneck's business was being used to fence stolen merchandise. (Affidavit, Peter Carando, pars. 5, 6, 7, Exh. 6 to Memorandum in Support of Defendants' Motion, a ltr. dtd. Nov. 20, 1981.)

Prior to April of 1982, the defendant Detective LaDue was at Mr. Whiteneck's place of business five to ten times, and picked up pieces of stolen property there (LaDue deposition, p. 27). When the piece of jewelry bought by Mr. Whiteneck from Anna Bugbee turned out to be the property of one S. King Freedman, Detective LaDue sought an arrest warrant on a complaint from the District Court of Springfield. The warrant issued, and the arrest was made. Plaintiff asserts that this was a false arrest. In essence he is claiming a violation of the Fourteenth Amendment's protection against deprivation of liberty without due process of law, but he was arrested on a facially-valid warrant after a determination of probable cause.

Plaintiff protests that he was ultimately found innocent because LaDue "didn't have any reason to believe that Whiteneck knew the bracelet was stolen", and still caused the complaint to issue against him. As was said, however, in *Baker v. McCollan*, 443 U.S. 137, at 145, 99 S.Ct. 2689, at 2695, 61 L.Ed.2d 433:

"Respondent's innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law. The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released."

There is no evidence which would warrant a finding of any other alleged deprivation of constitutional right by defendant LaDue and he is therefore entitled to judgment.

Turning to the claim against the City of Springfield, plaintiff contends that the license issued to him constituted property right sufficient to invoke the protections of the due process clause of the Fourteenth Amendment; hence, the license could not be revoked or suspended without notice and an opportunity to be heard. General Laws, c. 140, § 54. *Konstantopoulos v. Whately*, 424 N.E.2d 210 (Mass.1981); *Medina v. Rudman*, 545 F.2d 244, 250 (1st Cir.1976). We assume that the last citation is offered for the proposition that the property interest created by the license attained the status that entitled it to protection under the due process clause, by virtue of its recognition by state law. "Doubtless once a license, or the equivalent, is granted, a right or status recognized under state law would come into being, and the revocation of the license would require notice and hearing....". *Medina*, supra, at 250.

General Laws, c. 140, § 181, provides that the licensing authorities may "revoke or suspend such license at their pleasure." The defendant City calls our attention to the proposition that it is the law of Massachusetts that one who accepts a license which may be revoked at the discretion of the authority granting it, accepts it as such, citing *Marrone v. City Manager of Worcester*, 329 Mass. 378, 379, 108 N.E.2d 553, 554 (1952). On the other hand, Mr. Justice Spalding also wrote in that opinion that "The words 'at their pleasure' in § 181 have been construed to mean 'in the exercise of a wise discretion' ". Whether the revocation here, under the circumstances then existing, constituted the exercise of a wise discretion might become a factual issue to be resolved. Assuming no factual issue, one might follow the thrust of *Hagopian v. Trefrey*, 639 F.2d 52 (1st Cir., 1981) in resolving the question whether plaintiff Whiteneck had a "property interest" of the nature that, constitutionally, required a hearing before it could be taken away. *Hagopian* concerned the dismissal of a town manager who complained that at a hearing granted him, a town board failed to identify in detail the grounds for his removal, and failed to allow him to cross examine members of the board under oath at the public hearing. The Court of Appeals studied the pertinent statute (the Saugus town charter) and found that its significant aspect was that, from the *standpoint of a property right*, town managers could be dismissed without cause. Thus, said the Court, the statute conferred no property interest. An analogy might be drawn, which analogy could result in a conclusion that the license granting statute under which this Commission acted, conferred no property interest worthy of protection. Such a conclusion appeals logically, except for the interpretation of c. 140, § 181 by Mr. Justice Spalding, and the fact that one looks to Massachusetts law here to determine the existence or nonexistence of a protected property interest.

We proceed, therefore, on an assumption that the interest of Mr. Whiteneck in his license was such that he was entitled to a hearing prior to its revocation, and that the denial of the hearing was violative of his right to due process. In the course of his deposition Peter Carando of the Police Commission testified that the minutes of the meeting of the Commission held April 14, 1982 disclose that Mr. Whiteneck was not present when the license was revoked because of a conversation which the Commission had had with Mr. Whiteneck the previous November (in which the plaintiff was warned to keep better records and to comply with the thirty-day holding law) and what happened subsequently with respect to the bracelet.

■ If the Commission, by its action on April 14, 1982, violated the rights of the plaintiff, can the City be held responsible? The plaintiff in his memorandum recognizes that a municipality is ordinarily not liable for action taken by a municipal employee, but reminds us that if a municipal policy or custom is the cause of the conduct (rather than on the basis of *respondeat*

*superior* ) the municipality will be liable. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "A policy or custom need not be made by the city's lawmakers, but can be set by 'those whose edicts or acts may fairly be said to represent official policy'". (Plaintiff's Memorandum, p. 9) Plaintiff then concludes: *"Owen [Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)] makes clear that the Commission's conduct in revoking Whiteneck's license amounted to official policy causing an infringement of Whiteneck's rights under 42 U.S.C. § 1983 because the revocation was caused by those whose acts may fairly be said to represent official policy". (Plaintiff's Memorandum, p. 11) The basis for the conclusion that the Commission's members enunciate policy for the municipality is nowhere disclosed by plaintiff. There is an attempt to persuade the Court that the revocation of licenses without hearings was a "policy" of the Commission since there was one prior instance in which a license had been so revoked. The logic escapes me.

One or two instances do not a policy make. We have no idea of how many licenses are issued by the Commission, nor how many are revoked, nor how many are revoked after hearing, nor how many are revoked after hearing without giving a further hearing (as apparently happened here —hearing, warning, information concerning further misconduct, revocation without further hearing). Even if the Commission were capable of setting and/or enunciating official "policy" on behalf of the City, there is nothing to warrant a conclusion that the action taken in the case of Mr. Whiteneck was action in accord with such a policy. There was no proclamation that such was the manner in which cases were to be handled, and there is nothing to indicate that a "custom" was followed. Since, on the matters presented, one may not conclude that there was a custom or policy of the city which was causally linked to the license revocation, the plaintiff cannot prevail as against the municipality.

ORDERED: Judgment for the individual and the municipal defendants.