1001 PLAYS, INC. *vs.* MAYOR OF BOSTON.

Middlesex. September 13, 1982. — January 11, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Administrative Law,* Judicial review. *License. Public Entertainment.*

Where both parties in an action seeking judicial review of the denial by the mayor of Boston of the plaintiff's application under G. L. c. 140, § 181, for a license to operate an entertainment center agreed that G. L. c. 140, § 181, was the applicable statutory provision, this court did not decide the issue raised by the licensing board for the city of Boston, as amicus curiae, suggesting that G. L. c. 140, § 177A, rather than § 181, was the applicable licensing provision. [883-884]

Where both parties in an action seeking judicial review of the denial of an application for a license under G. L. c. 140, § 181, to operate an entertainment center agreed that the substantial evidence test was the appropriate standard of review and where the decision denying the application satisfied that test, this court did not consider whether a less demanding standard of review was appropriate. [884-886]

In the circumstances, substantial evidence supported the denial by the mayor of Boston, acting through the licensing division of his office, of an application under G. L. c. 140, § 181, for a license to operate an entertainment center, on the grounds that granting the application would result in an unreasonable increase in traffic and would raise the incidence of disruptive conduct in the area. [886-888]

CIVIL ACTION commenced in the Superior Court Department on May 15, 1981.

The case was heard by *Hallisey,* J.,

The Supreme Judicial Court granted a request for direct appellate review.

*Ira H. Zaleznik (Valerie L. Pawson* with him) for the plaintiff.

*Arlene S. LaPenta,* Assistant Corporation Counsel, for the defendant.

HENNESSEY, C.J. The plaintiff, 1001 Plays, Inc., commenced this action in the nature of certiorari under G. L.

c. 249, § 4, against the defendant, mayor of the city of Boston, to seek judicial review of the denial by the licensing division of the mayor's office (division) of 1001 Plays' application for a license to operate an entertainment center.[1] A judge in the Superior Court conducted a hearing on the record of the administrative proceedings and affirmed the division's decision to deny 1001 Plays' application for a license. We granted the plaintiff's application for direct appellate review. Both parties assert that the standard of review here is measured by the "substantial evidence" test, and for purposes of this case we accept that premise. 1001 Plays argues, however, that the division's denial of the license application is not supported by substantial evidence, as that test is properly applied. We disagree. We conclude that the Superior Court judge was correct in determining that the division's decision is supported by substantial evidence.

---

[1] General Laws c. 140, § 181, as amended through St. 1981, c. 351, § 84, provides in relevant part: "The mayor or selectmen may . . . grant . . . a license for . . . public amusements . . . in which, after free admission, amusement is furnished upon a deposit of money in a coin controlled apparatus . . . .

"[T]he mayor or selectmen shall grant such license or shall deny such license upon a finding that issuance of such a license would lead to the creation of a nuisance or would endanger the public health, safety or order by: (a) unreasonably increasing pedestrian traffic in the area in which the premises are located or (b) increasing the incidence of disruptive conduct in the area in which the premises are located or (c) unreasonably increasing the level of noise in the area in which the premises are located."

These criteria were added by St. 1979, c. 358. Statute 1979, c. 358, is the applicable version of the statute in this case because 1001 Plays' license application was denied in 1980. Since the 1981 amendment did not alter the statute's provisions in any relevant respect, we will refer throughout this opinion to G. L. c. 140, § 181, as amended through St. 1981, c. 351, § 84. The City of Boston Code empowers the division, through the mayor, to grant or deny such licenses based on the same criteria as are found in G. L. c. 140, § 181. The Boston ordinance also contains criterion (d), which reads, "otherwise significantly harming the legitimate protectable interests of the affected citizens of the city." City of Boston Code, Ordinances, Title 14, § 428 (1978). Since criterion (d) has been declared unconstitutionally vague, Fantasy Book Shop v. Boston, 652 F.2d 1115, 1124 (1st Cir. 1981), the division does not rely upon it in any way in this appeal.

1001 Plays is in the business of operating and maintaining entertainment centers featuring electronic games of skill, commonly known as "video" and "pinball" games. After operating one automatic amusement arcade in Cambridge, 1001 Plays sought a new location in the Allston-Brighton section of Boston. Accordingly, 1001 Plays leased building space and applied to the division for a license to operate an entertainment center.

1001 Plays filed its first application with the division on September 11, 1978. At a public hearing on October 25, 1978, local officials voiced strenuous opposition to the application. The division denied the license, citing as grounds community opposition and unreasonable increases in traffic and disruptive conduct. The division also based its denial on the ground that a lack of off street parking violated the Boston zoning code.[2]

In February, 1980, after reducing the floor space in the premises and receiving certificates of occupancy and inspection, 1001 Plays submitted a second license application to the division. 1001 Plays also applied for hours of operation limited to 11 P.M. At a public hearing on March 10, 1980, substantial local opposition was voiced once again. The division reviewed testimony and letters from officials and residents familiar with the present condition of the Allston-Brighton area. 1001 Plays presented testimony demonstrating the lack of crime and traffic at its Cambridge location and introduced a study comparing the Cambridge site with the Allston-Brighton site. 1001 Plays also presented a public opinion survey conducted in the Allston-Brighton area about video game arcades. The division found, however,

---

[2] 1001 Plays was also denied a building permit by the building department of the city of Boston because the proposed location did not meet off street parking requirements. 1001 Plays thus revised its plans and in a second application for a building permit 1001 Plays reduced the floor area of the premises from 1,768 square feet to 740 square feet. The new application was allowed and, after construction, 1001 Plays was issued a certificate of occupancy and an inspection certificate signifying compliance with local codes. As certified, 1001 Plays' premises had a maximum capacity of twenty-six people and sixteen amusement games.

that, notwithstanding 1001 Plays' site comparison, the areas were not similar. The division thus concluded that comparisons between the two areas were not relevant. After evaluating the evidence presented at the hearing, the division again decided to deny the application of 1001 Plays. The division acknowledged the decreased occupancy limit, but nevertheless expressed concern with the number of people that 1001 Plays would attract to the area as opposed to the number of people the premises would actually accommodate at any one time. The division based its denial on the conclusion that 1001 Plays would unreasonably increase traffic and noise and increase the incidence of disruptive conduct in the area where it sought to locate.

1001 Plays subsequently commenced this action in the Superior Court to seek judicial review of the division's denial of its application. The judge upheld the division's decision on the ground that substantial evidence supported the division's determinations that the proposed arcade would increase traffic and noise unreasonably and would increase the incidence of disruptive conduct.[3] Preliminarily, we observe that both parties agree that G. L. c. 140, § 181, is the applicable statutory provision and that the substantial

---

[3] The judge concluded the following: "1. The licensing authority on the evidence could and did properly conclude that the proposed establishment would attract a substantial number of young people and, added to the already heavy pedestrian and vehicular traffic, would endanger public health, safety or order by unreasonably increasing pedestrian traffic.

"2. The licensing authority on the evidence was reasonable in concluding that the nature of the activity, superimposed on the entertainment and drinking establishments already in the area, would endanger public health, safety or order by increasing the incidents of disruptive conduct.

"3. The evidence did not support the inferences that the addition of this activity would endanger public health, safety or order by unreasonably increasing the level of noise in the area. The sole evidence, other than generalized unsupported conclusory predictions, is that of petitioner's expert Lebow, whose evidence (and the licensing authority did not find it incredible) was to the effect that there would be no increase in noise.

"4. The licensing authority's decision was fair and reasonable, and within its discretion. Having properly found two of the three bases of denial, the decision was appropriate."

evidence test is the appropriate standard of judicial review.[4]
For the reasons stated hereafter, we do not resolve the
merits of these two issues. Rather, we decide only that the
division's denial of 1001 Plays' application is supported by
substantial evidence.

The licensing board for the city of Boston (board) has as-
serted in an amicus brief that G. L. c. 140, § 181, may not
be the appropriate licensing provision for video games.
Rather, the board suggests that G. L. c. 140, § 177A, may
be the relevant, and possibly the exclusive statutory licens-
ing provision with regard to video game entertainment.
General Laws c. 140, § 177A, as amended through St. 1981,
c. 520, provides for the licensing of any "automatic amuse-
ment device" which is defined as "any mechanism whereby,
upon the deposit therein of a coin or token, any apparatus is
released or set in motion . . . for the purpose of playing *any
game involving, in whole or in part, the skill of the player*"
(emphasis supplied). General Laws c. 140, § 181, as
amended through St. 1981, c. 351, § 84, provides for the
licensing of "public amusements . . . in which, after free
admission, *amusement is furnished* upon a deposit of money
in a coin controlled apparatus" (emphasis supplied). The
board stresses that video games and pinball machines, be-
cause they involve the skills of the player, are clearly within

---

[4] 1001 Plays also asserts that because of the First Amendment implica-
tions of this case, the division must be deemed to bear the burden of prov-
ing that the denial of the license application is justified, see *Speiser* v. *Ran-
dall*, 357 U.S. 513, 526 (1958), L. Tribe, American Constitutional Law
§ 12-36, at 734-735 (1978), and that G. L. c. 140, § 181, should be inter-
preted to require "clear and convincing proof" of the statutory criteria.
See *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 342 (1974); *Stone* v. *Essex
County Newspapers, Inc.*, 367 Mass. 849, 870-871 (1975). Since we con-
clude that the division's actions were justified even under these more strin-
gent standards, we do not reach the issue whether video games contain ex-
pression protected by the First Amendment or whether, even if protected
expression is involved, the division must satisfy these higher standards.
We also note that 1001 Plays, like the plaintiff in *Caswell* v. *Licensing
Comm'n for Brockton, ante* 864 (1982), does not demonstrate successfully
on this record that the video game entertainment it sought to present is
protected expression.

the scope of § 177A. The board urges that a license under § 177A, therefore, is required regardless of the applicability of § 181. We recognize the persuasiveness of the board's arguments. We note, however, that it is possible that § 181 may apply to video game arcades, while § 177A applies to individual video games. Hence, in the case of video game arcades, licenses may be required under either or both G. L. c. 140, § 181 and § 177A. We also point out that G. L. c. 140, § 181, the provision before us, provides that the mayor or selectmen shall perform the licensing while G. L. c. 140, § 177A, states that "[t]he *licensing authorities* of any city or town" shall perform the licensing (emphasis supplied). Thus, it is unclear whether § 177A may be applied to actions taken by the mayor. Finally, we observe that in this case, 1001 Plays did apply to the board for licenses under § 177A. When 1001 Plays applied, however, the board had adopted a policy that it would issue licenses under § 177A only to premises holding other licenses from the board. The board, therefore, dismissed 1001 Plays' applications. In its amicus brief, the board declines to take a position on whether a license under § 181 was sufficient during the period of time that it followed this policy. Since neither party has ever briefed or raised any issue with regard to whether § 177A should apply in this case and since the matter obviously raises many difficult questions, we decline to resolve it.

   Therefore, we examine only whether the division was justified, under the statutory criteria of G. L. c. 140, § 181, in denying 1001 Plays' application for a license to operate an entertainment center. Since both parties agree that the substantial evidence test is the appropriate standard of review and because the division's decision satisfies that test, we do not address whether a lesser standard of review should apply. See *Konstantopoulos* v. *Whately*, 384 Mass. 123, 137 (1981); *McSweeney* v. *Town Manager of Lexington*, 379 Mass. 794, 800 (1980); *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 48-49 (1977). We note, however, that although we have concluded recently

that the substantial evidence test should apply to proceedings to revoke an entertainment license under G. L. c. 140, § 183A, *Konstantopoulos* v. *Whately, supra,* and a common victualler's license under G. L. c. 140, § 9, *Saxon Coffee Shop* v. *Boston Licensing Bd.,* 380 Mass. 919, 924 (1980), we have not addressed whether the substantial evidence test should apply to the denial of an *original application* for a license under G. L. c. 140, § 181, or whether the scope of review should be more limited. See *McDonald's Corp.* v. *Selectmen of Randolph,* 9 Mass. App. Ct. 830, 832 (1980) (local licensing board's denial of an application for a common victualler's license would be upheld unless the applicant demonstrates that the licensing authority committed an error of law or otherwise violated legal rights of applicant).

The substantial evidence test requires the reviewing court to uphold the decision of the licensing authority as long as the findings by the authority are supported by substantial evidence in the record considered as a whole. *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466 (1981). "'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6), inserted by St. 1954, c. 681, § 1. We note the limited nature of our review under the substantial evidence standard. Although we must examine the entire record, including any evidence that detracts from the weight of the division's decision, see *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966), we may not substitute our judgment for that of the division. *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 304 (1981). *Dixie's Bar, Inc.* v. *Boston Licensing Bd.,* 357 Mass. 699, 703 (1970).

1001 Plays contends that the Superior Court judge erred in applying the substantial evidence test because he permitted the division to make its predictions about increases in traffic and disruptive conduct based upon "reasonable judgments" rather than upon a neutral evaluation of objective evidence. 1001 Plays recognizes that "predictions of future

disruption must by definition be based on inferences and projections." *Fantasy Book Shop* v. *Boston,* 652 F.2d 1115, 1125 (1st cir. 1981). It asserts, however, that in this case there was no foundation of objective evidence for the division's inferences and predictions. This argument is without merit.

With regard to the predictions about increases in pedestrian traffic, the division examined testimony from area residents and local government officials, as well as a letter from the comissioner of the department of traffic and parking. All this evidence demonstrated that the exact area where 1001 Plays seeks to locate is a dangerous intersection, with heavy circulation of pedestrian and vehicular traffic and a severe parking problem. The commissioner concluded that 1001 Plays' proposed video game arcade would increase pedestrian use of the intersection and thereby increase the probability of pedestrian related accidents.

We have stated that where a finding is "essentially a matter of drawing inferences," an authority's "conclusions based on inferences will not be set aside by a reviewing court unless they are unreasonable." *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 310 (1981). In light of the evidence presented about the dangerousness of this intersection, the determination that the addition of a new business establishment would attract new customers to the area and increase pedestrian traffic does not appear unreasonable. Indeed, as 1001 Plays points out, video games and video game arcades are popular, and it is a fair inference that an arcade at this intersection would attract a significant number of people. 1001 Plays stresses that it has reduced its maximum occupancy to twenty-six persons. Such a reduction in floor space, however, reveals nothing about how many people would be attracted to the arcade as opposed to fitting within it. A reasonable fact finder could determine that an establishment of such popularity would aggravate what the evidence shows to be an already hazardous vehicular and pedestrian traffic problem in an area where even a minimal increase could be considered unreasonable.

The division's conclusion that 1001 Plays' proposed arcade would increase the incidence of disruptive conduct is also a reasonable inference based on objective evidence. Testimony from residents, local officials, and Detective Sergeant James J. Feeney of the Boston police department demonstrated a current problem with crime and disruptive conduct. Police statistics indicate that the location in question is considered a "high crime area." The evidence also revealed that there are already nine liquor and entertainment establishments in that neighborhood. These establishments all tend to attract a young, transient crowd, which is considered a major factor in the present crime problem. Based on this evidence, the division concluded that a video arcade, which is generally a youth oriented establishment, would further attract young people and lead to an increase in crime and disruptive conduct.

We recognize, as did the division, that the increase in "the incidence of illegal or disruptive conduct" criterion in § 181 is much more difficult to predict and rests much more on speculation than the other criteria. Nevertheless, we conclude that the division's determination that the incidence of crime and disruptive conduct would increase is not unreasonable. We point out that the role of a judge in applying the substantial evidence test is to "decide whether experience permits the reasoning mind to make the finding; he must decide whether the finding *could* have been made by reference to the logic of experience. He will conclude that the finding is unreasonable (either because it was badly reasoned or not the result of reasoning) when in his experience or in common experience as he knows it the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary." *Boston Edison Co.* v. *Selectmen of Concord,* 355 Mass. 79, 92 (1968), quoting L.L. Jaffe, Judicial Control of Administrative Action 598 (1965).

We have taken into account "'whatever in the record fairly detracts'" from the substantiality of the evidence. *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466

(1981). The record contains no evidence presented by 1001 Plays which is of such weight as to make the findings of the division appear unreasonable. 1001 Plays relies heavily upon its comparative site survey, which demonstrates certain similarities between Allston-Brighton and Cambridge. The division, however, after examining this survey and the respective areas, concluded that the particular neighborhoods are different and that the survey did not negate these differences. The division further determined that comparison between the two areas, therefore, would not be relevant in assessing the types of problems that this particular video game arcade would create at the specific address in the Allston-Brighton area. In light of all the evidence submitted we cannot determine that the division's conclusions were unreasonable. Accordingly, we uphold the judge's decision affirming the division's denial of 1001 Plays' application for a license to operate an entertainment center under G. L. c. 140, § 181.

*Judgment affirmed.*