Connon, J.
INTRODUCTION
This action is before the court on Frank’s of Brockton, Inc.’s (“Frank’s”) writ of certiorari challenging the decision by the Brockton License Commission (“the Commission”) to deny Frank’s application to expand its entertainment license to include dancing by nude performers. Five of the nine counts have been resolved by summaiy judgment. Four counts remain available for trial, including, inter alia, whether the Commission’s reasons for denying a license given in its decision of June 1996 were pretextual and whether the Commission’s action thus constituted a violation of Frank’s protections of freedom of expression under the First and Fourteenth Amendments to the Constitution and art. 16 of the Massachusetts Declaration of Rights.
FINDINGS OF FACT
A. Frank’s Operations and Licenses Before 1996
Frank’s owns and operates a restaurant and nightclub business named “Frank’s” located at 265 North Pearl Street in Brockton. Frank’s has been located in the same free-standing building in a commercially zoned district in Brockton since approximately 1975.
Frank’s has maintained an entertainment license and a common victualer license issued by the City of Brockton since 1975. From 1975 through 1991, its entertainment license included several permissible categories of entertainment, including eight-piece orchestra entertainment, singers, television, radio, jukebox, dancing by patrons, and dancing by performers.
From 1975 through 1991, Frank’s operated a nightclub featuring rock and roll bands, drawing a crowd of 400 to 500 persons nightly. From 1991 through 1994, Frank’s presented other types of entertainment than in previous years, including folk singers, blues *460 bands and belly dancers, attracting around 400 customers.
Frank’s hours of operation were from 8:00 P.M. until 1:45 A.M. on Thursday, Friday and Saturday (and Sunday before a Monday holiday), and from 8:00 P.M. until 12:45 A.M. Sunday through Wednesday.
Frank’s continued to present entertainment events without complaint from any official from the City of Brockton that its activities adversely affected the public health, safety or order; nor did it receive any notice that its activities adversely impacted traffic, parking or noise during the period of time between 1975 and May 29, 1996.
When Frank’s renewed its license in 1992, the license included the same categories of entertainment but the category of dancing by performers was inadvertently omitted. Thereafter, the category of dancing by performers was omitted for three years from Frank’s renewed licenses from 1992 until 1995, when Frank’s first realized that the category was no longer contained in the license. During that time, Frank’s had continued to present dancing by performers on various occasions, including belly dancers.
From 1992 until 1995, the City of Brockton was also unaware of the omission, and the Brockton City License Commission at no time raised the issue that Frank’s continued to present dancing by performers despite the fact that its license did not include this category within the permissible forms of entertainment.
B. Frank’s Applications to Amend and Expand its License
In May of 1995, Frank’s filed a written application to expand its hours of operation by an additional eight hours a day. A hearing was held later that month, at which Frank’s stated that if the expansion of hours was granted, the establishment would be holding large events, like wedding receptions and banquets. The Commission unanimously approved Frank’s expansion of hours. Under the expanded permit, Frank’s operated from 12:00 P.M. until 12:45 A.M. Sunday through Wednesday, and from 12:00 P.M. until 1:45 A.M. on Thursday, Friday and Saturday (and any Sunday before a Monday holiday).
On December 11, 1995, Frank’s attempted to amend its entertainment license by filing a written application with the Commission, pursuant to G.L.c. 140 §183A, to include the category of dancing by performers. The application did not include the category of nude dancing. The Commission held a hearing on Frank’s application on January 24, 1996. The commissioners had received calls about a rumor that Frank’s was “going to try a Foxy Lady deal.”[2] Brockton License Commission meeting, January 24, 1996, Tr. at 7, 1.79. A commissioner told Frank Caswell, the owner of Frank’s, that the Commission was “getting a lot of opposition from the outside on this, too” and that it was not “just this Commission" that was opposed. Id. at 10, 1.129. Another Commission stated that if Mr. Caswell wanted real opposition, he should submit an application for nude dancing because there would be one thousand protesters at the high school. The Commission voted to deny Frank’s a license to present non-nude dancing by performers on the grounds that the commissioners did not want to “open up” that category of entertainment.
On February 6, 1996, Frank’s filed a second application for an entertainment license, and unlike the previous application, the application specifically requested the right to present nude dancing by performers as required by G.L.c. 140, §183A. The same day, an ordinance was submitted to the Brockton City Council to amend Chapter 27, Sections 27-35 of the city zoning bylaws to restrict adult entertainment, including dancing by nude performers, to Brockton’s Heavy Industrial Zone.
Brockton Mayor Jack Yunits was quoted in the Brockton Enterprise, a daily newspaper, that he was determined to keep nude dancing out of Frank’s, and stated that “if they want a war, they’re going to get a war.”
If Frank’s had been granted a hearing on its application within 45 days as required by statute, the hearing would have had to have been held no later than March 21, 1996. However, the earliest the City Council would be able to vote on the ordinance to amend the zoning bylaws was April 8, 1996.
Frank’s was notified on March 12, 1996 that the Commission would not be holding a hearing on the February 6th application because the Commission had concluded that applications for dancing by non-nude performers and nude dancing by performers were “similar” under G.L.c. 140, §183A. The statute states ”[n]o application having been denied as aforesaid and no similar application thereto may be filed within one year of said denial except in the discretion of the licensing authorities.” G.L.c. 140, §183A. The City Council voted on April 8, 1996 to enact the zoning bylaws ordinance that would restrict nude dancing entertainment to the Heavy Industrial Zone.
Frank’s thereafter filed suit in this court against the City, and members of the licensing commission individually, alleging violations of the licensing statute, in addition to violations of the First and Fourteenth Amendments to the U.S. Constitution and art. 16 of the Massachusetts Declaration of Rights, violations of 42 U.S.C. §1983 and 42 U.S.C. §1981, and G.L.c. 12, §111.
Frank’s filed for a preliminary injunction to prohibit the Commission from applying the amended zoning ordinance when it rendered a decision on Frank’s application for a nude dancing license. In a hearing before this court on May 8, 1996, the City conceded that it had improperly denied Frank’s December 11, 1995 application to present non-nude dancing by *461 performers, and agreed to issue Frank’s that license. Subsequent to the hearing, this court granted Frank’s motion for a preliminary injunction. In a Memorandum of Decision and Order of May 28, 1996, this court (Xifaras, J.) found that Frank’s was likely to prevail on its claim that the City’s predominate intent was to prevent Frank’s from engaging in protected expression by presenting nude dancing, thus rendering the application of the otherwise permissible ordinance unconstitutional. In granting the preliminary injunction, this court ordered the Commission to hold a hearing on Frank’s February 6,1996 license application within 21 days, with any decision to be entered nunc pro tunc as of March 21, 1996, and further enjoined the Commission from applying the April 8th zoning amendment to Frank’s in making its licensing determination.
The Commission notified Frank’s on May 23, 1996, that it would hold a hearing on Frank’s application to present nude dancing on May 29, 1996. After the close of the hearing, the Commission unanimously voted to deny the application, and it issued a written decision outlining the reasons for the denial on June 26, 1996.
Frank’s moved for partial summary judgment on Counts IV and V of its amended complaint alleging violations of the licensing statute. This court denied partial summary judgment, and in a Memorandum and Order of January 3, 1997 (Delvecchio, J.), found that the Commission’s determination that the granting of a license to present nude dancing at Frank’s would lead to an unreasonable increase in the incidence of noise and traffic was logical and supported by substantial evidence.
On January 18, 1998, this court (Brady, J.) awarded partial summary judgment in favor of the defendants’ motion with respect to Counts I, II, and III and in a memorandum of decision and order found that “there are genuine issues of material fact whether the defendants acted with impermissible intent to deprive the plaintiff of its constitutional right of freedom of expression, and whether the defendants’ stated reasons for denial in the June 26, 1996 decision were a pretext.”
Frank’s filed its second application for a nude dancing license in August 1997. The Commission held a hearing on October 6, 22, 28 and November 5, 1997, and voted on November 5th to deny the application. The Commission issued a written decision on November 13, 1997, citing concerns of traffic, noise, parking and public safety.
Frank’s filed its second lawsuit against the City and the Commission in January 1998, and defendants moved successfully to consolidate the two cases.
CONCLUSIONS OF LAW
A. Standard of Review
The statute governing entertainment licenses, G.L.c. 140, §183A, gives the local licensing authorities broad discretion, but leaves an aggrieved party with no opportunity for further review in the form of an administrative appeal or judicial review. See G.L.c. 140, §183A; Konstantopoulos v. Whately, 384 Mass. 123, 131 (1981). Accordingly, Frank’s brings its claims via a writ of certiorari pursuant to G.L.c. 249, §4, because such an action is the sole relief available for parties aggrieved by a discretionary decision of a local licensing authority for which there is no statutory right of appeal. See Bermant v. Bd. Of Selectmen of Belchertown, 425 Mass. 400 (1997).
The Supreme Judicial Court has ruled that the appropriate standard of review to be applied in certiorari cases must be determined “according to the nature of the action sought to be reviewed." Konstantopoulos, supra, at 136 (internal quotations omitted). Previous decisions in this matter have employed the substantial evidence standard to the Commission’s decision, and the Commission argues that, under the law of the case principle, this court is bound by the substantial evidence standard.[3] See Lacy v. Gardino, 791 F.2d 980 (1st Cir. 1986).
The Supreme Judicial Court has determined that, in cases of revocation of an entertainment license under G.L.c. 140, §183A, the substantial evidence test should be applied. See Konstantopoulos, supra at 137. The Court has not definitively ruled on cases of an original application for a license or amendment of a license under G.L.c. 140, §183A. Cf. 1001 Plays, Inc. v. Mayor of Boston, 387 Mass. 879, 884 (1983) (judicial review of denial of application for license under G.L.c. 140, §181 properly employed substantial evidence test); but see, Caswell v. Licensing Commission for Brockton, 387 Mass. 864, 878 n.9 (1983) (noting that, where First Amendment rights are involved, “a strong argument could be made that the standard of review should be higher than an abuse of discretion . . . and that the licensing authority should carry the burden of proving that the denial of the license application is justified”). Based upon the rulings the Supreme Judicial Court has made in similar cases, especially in cases of a license revocation under G.L.c. 140, §183A, and given that the substantial evidence test was previously used in this case, this court concludes that substantial evidence is the proper standard to be employed here.
Substantial evidence has been described as evidence as a reasonable mind might accept as adequate to support a conclusion. See G.L.c. 30A, §1(6). “Some evidence or any evidence which might rationally create an inference” is not sufficient to meet this standard. Saxon Coffee Shop, Inc. v. Boston Licensing Board, 380 Mass. 919, 930 (1980) (internal quotations omitted). Substantial evidence must be evaluated in the light of contradicting evidence upon which the Commission relied. Cohen v. Board of Registration in Pharmacy, 350 Mass. 246, 253 (1966).
*462 B. First Amendment and Art. 16
Among the claims asserted by Frank’s is the claim that the Commission acted with the intent of suppressing Frank’s right to freedom of expression under the United States Constitution and the Massachusetts Declaration of Rights when it issued the decision on Frank’s nude dancing application. This case involves both the validity of the denial of a license and, if the denial is invalidated, the issue of the applicability of a zoning ordinance passed subsequent to the original denial of the license, and thus, there are two distinct legal questions that will be treated separately below.[4]
First, it must be determined whether the reasons cited by the Commission for the denial of the license were pretextual and the decision was based upon a desire to restrain constitutionally-protected expression.
Second, this court must consider whether the zoning ordinance enacted subsequent to the initial application by Frank’s to expand its entertainment license is unconstitutional as it applies to Frank’s.
As a preliminary matter, adult entertainment is a protected form of expression by the First Amendment to the United States Constitution and art. 16 of the Massachusetts Constitution. Schad v. Mount Ephraim, 452 U.S. 61, 65-66 (1981); Commonwealth v. Sees, 374 Mass. 532, 536-37 (1978); T&D Video, Inc. v. Revere, 423 Mass. 577, 582 (1996). Nude dancing thus falls within the scope of expressive conduct protected by the First Amendment.
With regard to the government regulation of expressive conduct, “(a]ny government regulation that limits or conditions in advance the exercise of protected First Amendment activity constitutes a form of prior restraint, and any such restraint comes bearing a heavy presumption against its constitutional validity.” Fantasy Book Shop, Inc. v. City of Boston, 652 F.2d 1115, 1120 (1981) (internal citations and quotations omitted). Nevertheless, not all prior restraints are constitutionally impermissible. That is, reasonable regulations restricting the time, place and manner of protected speech may be imposed by the government, “provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.” Boston v. Back Bay Cultural Ass'n, Inc., 418 Mass. 175, 178-79 (1994) (internal quotations omitted).
It is clear that Frank’s right to freedom of expression has been, in the least, implicated in the Commission’s decision to deny the permit for nude dancing.
1.) The Commission’s decision to deny an amendment to Frank’s license to allow nude dancing
General Laws chapter 148, §183A, which governs decisions by the licensing authorities provides, in relevant part:
The licensing authorities shall grant a license under this section unless they find that the license, taken alone or in combination with other licensed activities on the premises, would adversely affect the public health, safety or order, in that the concert, dance, exhibition, cabaret, or public show cannot be conducted in a manner so as to: (a) protect employees, patrons, and members of the public inside or outside the premises from disruptive conduct, from criminal activity, or from health, safety, or fire hazards; (b) prevent an unreasonable increase in the level of noise in the area caused by the licensed activity or caused by patrons entering or leaving the premises; or (c) prevent an unreasonable increase in the level of pedestrian or vehicular traffic in the area of the premises or an unreasonable increase in the number of vehicles to be parked in the area of the premises.
G.L.c. 140, §183A. Frank’s does not mount a facial challenge on the statute. Rather, Frank’s contends that the reasons for denial of the license cited by the Commission, which by design fall within the permissible reasons for denial set forth in G.L.c. 140, §183A, were pretextual and that the commissioners instead based their decision on a bias against nude dancing. Frank’s alleges that this act constituted an impermissible suppression of constitutionally protected expression.
General Laws c. 140, §183A does contain a prior restraint on conduct on the grounds of protecting against adverse effects on the “public health, safety or order,” noise, and traffic. However, such laws that attempt to limit disruptions like noise and traffic are clearly within a state’s constitutional power. See Fantasy Books, supra, at 1121; see also Young v. American Mini Theatres, 427 U.S. 50, 62-63 (1976). In order to prevail, Frank’s must demonstrate that “the neutral criteria asserted served as a mere pretext for what were in fact content-directed decisions." Fantasy Books, supra, at 1122. When the activities involved in the denial of a license involve the First Amendment, “proof that licenses were denied on the basis of content-based criteria would call . . . for invalidation of the denials.” Id.
Although courts have not specifically ruled on what standards a court should use in determining whether the reasons given by a city commission for the denial of a nude dancing license are pretextual, decisions with regard to adult entertainment and in other areas of the law provide some guidance.
In Philips v. Borough of Keyport, 107 F.3d 164 (3rd Cir. 1997), the appeals court held that the district court had incorrectly dismissed the plaintiffs’ substantive due process count for failure to state a claim. The plaintiffs, who had planned to open an adult bookstore, alleged that they were denied substantive due process by the revocation of their initial zoning permits, the imposition of new requirements for sub *463 sequent applications, and the borough’s refusal to act even after those requirements were met. Id. at 179. The court held that the plaintiffs allegations that the reasons given for the revocations and the new requirements were pretextual could serve as a predicate for recovery, if the borough was proved to have acted out of distaste for sexually explicit material and not a concern for undesirable secondary effects. Id. at 179-81. See also Connell v. Signoracci, 153 F.3d 74, 77-78 (2d Cir. 1998) (lower court found, in action not in scope of appeal, that allegation that a sign ordinance was selectively enforced to harass owners of topless bar stated claim for violation of the First Amendment); Nestor Colon Medina & Successors, Inc. v. Custodio, 964 F.2d 32 (1st Cir. 1992) (holding that plaintiffs evidence that denial of land use permit was retaliatory for plaintiffs expression of political views was sufficient to permit inference that planning concerns cited were pretext to hide retaliatory motive); Mayor and Aldermen of the City of Savannah v. TWA, Inc., 214 S.E.2d 370, 372 (Ga. 1975) (city may not refuse to issue license to sell materials protected by the First Amendment in order to suppress sale of pornographic materials); Treasure State Sales v. City of Kalispell, 580 P.2d 1383, 1384 (Mont. 1978) (city may not use licensing controversy as subterfuge for eliminating adult book store objectionable to the community).
In Massachusetts, in Irish-American Gay, Lesbian & Bisexual Group of Boston v. City of Boston, 418 Mass. 238 (1994), the Supreme Judicial Court upheld the trial court’s ruling that the reasons given at trial by the South Boston Allied War Veterans Council for excluding the plaintiffs from the annual St. Patrick’s Day Evacuation Day Parade were of a “pretextual nature.”[5] The superior court had further noted that plaintiffs were excluded from the parade by the Veterans Council because of the sexual orientation of its members, in violation of the Massachusetts public accommodations law. Id. at 242. The United States Supreme Court reversed, holding that the law did not apply to the Veterans Council, but did not question the trial court’s finding. Hurley v. Irish-American Gay Group of Boston, 515 U.S. 557 (1995).
Here, the duty of this court is to consider whether the Commission’s stated reasons for the denial of the application in the June 26, 1996 decision were a pretext for a content-based decision.[6] Accordingly, this court must consider the evidence on record prior to the issuance of the Commission’s decision on June 26, 1996, including evidence from the Commission’s meeting on Januaiy 24, 1996.
The record from the meeting of Januaiy 24, 1996, after Frank’s filed an application for non-nude dancing by performers, is quite revealing of the principal concerns and motives of the Commission. The meeting took place before Frank’s had filed an application for nude dancing. At the meeting, all three Commissioners noted out loud the opposition to a “Foxy Lady type of deal." Tr. at 10, 1. 127; id. at 10, 1.129, id. at 8, 1.90.[7] The Chairman of the Commission noted that the “sensitivity” of this issue and the fact that they had “gotten a number of calls on this one, I think it just opens it up.” Tr. at 8, 1.90. At no point during the January 24, 1996 meeting did the participants discuss any adverse effects on public health, safety, order, noise, parking, or criminal activity.
After a meeting in which the spoken and unspoken topic of discussion was whether Frank’s was planning to present nude dancing, the Commissioners voted to deny Frank’s application to amend its license for non-nude dancing by performers. The Commission denied the application, despite the fact that the Commission had not denied Frank’s request in the past twenty years of its existence to include that category of entertainment. Moreover, the Commission did not present new evidence which would support their change of heart, except for repeating the rumor that Frank’s was going to present nude dancing. Further, there was no presentation before or at the meeting of a record of complaints by the Commission or any members of the public during the period of time that Frank’s presented non-nude dancing by performers without the category included in his license, from 1992 through 1995, or complaints about Frank’s since it had expanded its hours.
The Commission ultimately held a hearing regarding the application for a nude dancing license on May 29, 1996, when ordered by this court. Four city councillors, several area residents and several local business representatives testified regarding the potential effect nude dancing at Frank’s would have on traffic conditions in the area. Many other concerns regarding public safety and order and noise were raised by members of the Commission and the public. During the hearing, Frank’s expressed the intention to abide by any conditions placed on the license regarding noise, signage, advertising, outside loitering, and security. The Commission denied Frank’s application at the close of the hearing, and issued written findings on June 26, 1996.
The use of predictions of future increases in traffic and other disruptive conduct must necessarily be based upon inferences and projections like the ones made before the Commission. In 1001 Plays, Inc. v. Mayor of Boston, supra, the Supreme Judicial Court found that, in a licensing matter, testimony from area residents and local government officials regarding predictions about increased pedestrian traffic, dangerousness of an intersection and parking was a sufficient basis from which a reasonable fact finder could draw an inference that a new establishment would cause an unreasonable increase in traffic. See id. at 886-87. However, in 1001 Plays, Inc., supra, the subject matter was a video and pinball arcade, and the case did not involve a First Amendment claim or any form of protected speech. Further, the plaintiff did not *464 raise any evidence of such a weight as to make the findings of the division unreasonable.
Thus, while bound by the previous rulings on Counts IV and V, and while it concurs in the use of the substantial evidence test that was applied, this court notes that the law of the case principle does not dictate that the same result occur in decisions for different breeds of claims. That is, merely because there is substantial evidence to support the decision for a license in consideration of one claim, it does not follow that there is substantial evidence to support a license where the reasons offered by the commission are completely pretextual and the denial violates First Amendment rights. The Supreme Judicial Court noted in Cohen v. Board of Registration in Pharmacy, supra, that contradicting evidence that detracts from the weight of the evidence upon which the Commission relied must be taken into account in the evaluation of substantial evidence.
In light of the lack of substantial evidence, I find that the denial of the license for nude dancing was based upon content-based considerations. Therefore, the denial of the license is voided.
2.) Applicability of the 1996 zoning ordinance to Frank’s license[8]
As discussed in B. 1. supra, the Supreme Court and the Supreme Judicial Court have upheld “content-neutral” time, place and manner regulations “so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication.” T&D Video, Inc., supra, at 581, quoting Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46-47 (1986). Further, the government’s motivation in passing the regulation is key. If the government’s “predominate” intent in enacting the regulation was unrelated to the suppression of protected expression, the regulation may be upheld as a valid content-neutral restriction. See Renton, supra, at 48. Moreover, the Supreme Judicial Court has noted that “(m]ere conclusions asserted after an ordinance’s enactment regarding the secondary effects of adult entertainment facilities or merchandise are insufficient to show that the ordinance was designed to serve a substantial government interest.” T&D Video, Inc., supra, at 581.
In its ruling granting a preliminary injunction that enjoined the City from enforcing the 1996 ordinance against Frank’s, this court (Xifaras, J.) found that Frank’s demonstrated a likelihood of success on the claim that the April 8th amendment to Brockton Zoning Ordinance Chapter 27 as applied to its February 6th licensing application violated the First Amendment. See Memorandum of Decision and Order on Plaintiffs Motion for Preliminary Injunction, May 23, 1996 (Xifaras, J.). The Commission has not put forth any new evidence that would persuade this court that the ordinance amendment as applied is anything other than an unconstitutional attempt to suppress expression.
On February 6, 1996, the same day that Frank’s filed an application for a nude dancing license, the amendment to the zoning ordinance bylaws was filed. The defendants have argued that the amendment was filed three hours before Frank’s filed its application, intimating that this fact detracts from the argument that the ordinance was filed in response to the situation surrounding Frank’s. As this court noted in its decision concerning a preliminary injunction in this matter, courts do consider the timing and sequence of events in consideration of whether the enactment of an ordinance effectuates a purposeful restraint on expression. Yet, whether or not the ordinance was filed three hours before Frank’s filed its application is of no consequence when considered contextually.
The Commissioners alluded to the rumor that Frank’s was considering the presentation of nude entertainment several times during their meeting on January 24, 1996. The rumor was pervasive enough for many members of the public to call the Commissioners on the subject. Clearly, the notion of a particular venue in Brockton offering nude entertainment was not a novel idea when the ordinance was filed on February 6. The Commission’s attempt to draw a distinction, based upon the three hours difference in filing time to support the assertion that the City’s motive in passing the ordinance was unrelated to Frank’s application is unpersuasive. The seeds of bias in the Commission against nude dancing had already been sown and widely displayed on the record and in the paper prior to the filing of the ordinance on February 6. See Brockton License Commission Meeting January 24, 1996, Tr. at 10, 1.127; id. at 10, 1.129, id. at 8, 1.90. An ordinance filed in the midst of such a set of circumstances cannot be transformed into a constitutional restriction, justified after the fact by concerns of secondary effects. See, e.g. T&D Video, Inc., supra, at 581. Rather, the evidence demonstrates that the enactment of the ordinance constituted a purposeful attempt to suppress expression, forbidden under the U.S. Constitution and the Massachusetts Declaration of Rights.
In light of the entire context in which the ordinance was filed and passed, I conclude that the enactment of the ordinance was a purposeful attempt to suppress expression. I thus find that the ordinance, as applied to Frank’s, is unconstitutional.
ORDER
For the foregoing reasons, it is hereby ORDERED that the decision by the Brockton Licensing Commission denying Frank’s of Brockton an amendment to its license permitting presentation of nude dancing by performers is VOIDED. It is further ORDERED that the Commission refrain from enforcing or applying the amended Brockton City Ordinance Chapter 27, or any *465 amendments thereto that supersede the amended ordinance to Frank’s of Brockton.

“Foxy Lady” refers to a well-known establishment nearby but outside of Brockton that has nude dancing.

Partial summary judgment requested by Frank’s was denied with respect to Counts IV and V of the amended complaint by Judge Delveccio on January 8, 1997. Count IV alleged that the Commission violated G.L.c. 140, §183A by only providing six days notice of a further hearing on its application; Count V asserted that the Commission’s decision denying the entertainment license to present nude dancing was arbitrary and capricious.

The Commission asserts that the issues in this case are moot because the disputed matters are based upon conduct involving a license that would have expired in 1996. Further, it argues, even if a license were issued, Frank’s would be subject to a 1996 zoning by-law that restricts adult entertainment to the Heavy Industrial Zone. Since Frank’s is not located in the appropriate zone, Frank’s would need to obtain a variance from the use restrictions which cannot be granted by the Commission.
Clearly, these issues would most certainly arise again under similar, if not the same factual circumstances, and they would evade further review because the duration of the license is for only one year. See Highland Tap of Boston, Inc. v. Comm’r of Consumer Affairs & Lic. of Boston, 33 Mass.App.Ct. 559, 566 (1992); She Enterprises, Inc. v. Lic. Comm'r of Worcester, 10 Mass.App.Ct. 696, 703-4 (1980). Thus, this court will not dismiss these claims on mootness grounds.

The Superior Court’s opinion in the case, 1 Mass. L. Rftr. 370, 1993 WL 818674, No. 92-1518 (December 15, 1993) (Flannery, J.) noted that:
[John J.) Hurley speaks for the Veterans Council and he testified on its behalf. He indicated that the objection to GLIB’s participation was based on the belief, although unsubstantiated, that its members were also members of ACT-UP and Queer Nation. The group’s potential for being disorderly was offered as a reason for excluding it. The defendant’s final position was that GLIB would be excluded because of its values and its message, i.e., its members’ sexual orientation.
Id. at *193565 n.5.

This court’s decision for partial summary judgment specifically identified this issue as one included in the case to be tried. See Memorandum of Decision and Order on Defendant’s Motion for Summary Judgment, July 18, 1997 (Brady, J.).

After some discussion back and forth. Commissioner Sullivan stated, “[w]ell, might as well cut to the nitty. We get [sic] some calls from some different councillors and different people who say, there’s a rumor going round that you’re going to try a Foxy Lady deal.” Tr. at 7, 1.79. After that initial airing of the issue, the discussion often focused on the rumor of Frank’s introducing nude performers, despite at least two denials by Mr. Caswell of such a plan.

In 1996, the City was enj oined by this court from applying Brockton’s amended zoning ordinance in rendering its decision regarding Frank’s application to expand its license to include nude dancing. See Memorandum of Decision and Order on Plaintiffs Motion for Preliminary Injunction, May 28, 1996 (Xifaras, J.). Frank’s did not move to make the injunction permanent.